UNITED STATES of America, Appellee,

v.

**Gaylon William JACKSON, Appellant.**

**No. 82-2547.**

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1983.

Decided Aug. 16, 1983.

Rehearing Denied Sept. 16, 1983.

Phillip A. Glades, David Robards, Joplin, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., Mark J. Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Gaylon William Jackson appeals from a final judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict finding him guilty of making or causing to be made false statements in invoices submitted in connection with a federally funded project, 18 U.S.C. §§ 1001, 2 (1976). For reversal appellant alleges prejudicial pre-indictment delay, insufficient evidence, admission of "bad acts" evidence, and erroneous jury instructions. For the reasons discussed below, we affirm.

Appellant owned and operated Southwest Engineering Company (Southwest). Appellant, however, is not an engineer. In 1978 the City of Neosho, Missouri (the City), contracted with Southwest to provide engineering services for improvements to its storm and drainage system (the project). The project was financed by the Department of Housing and Urban Development (HUD). The City required Southwest to submit invoices detailing the hours, costs, and services performed in connection with the project. Southwest submitted invoices that covered two-week pay periods. The invoices were prepared from "recap summaries" which were taken from time sheets completed by Southwest employees. In June 1982, Jackson was charged in a ten-count indictment of making or causing to be made false statements on ten invoices covering time periods from February 1, 1979 to July 31, 1979. Except for the dates involved,[2] each count of the indictment was identical and charged that appellant billed for inflated hours of the engineer and for nonexistent hours of the engineer-in-training. An engineer is a college graduate with a degree in engineering who has served an apprenticeship and has passed qualifying examinations. An engineer-in-training is a college graduate in engineering who works for a period of time under the supervision of an engineer. During the period covered in the indictment, Southwest billed for 307

1. The Honorable William R. Collinson, United States Senior District Judge for the Western District of Missouri.

2. The indictment related to the following two-week periods in 1979: Count I, February 1 through February 16; Count II, February 16 through February 28; Count III, March 1 through March 15; Count IV, March 16 through March 31; Count V, April 1 through April 15; Count VI, April 16 through April 30; Count VII, May 1 through May 15; Count VIII, May 16 through May 31; Count IX, June 1 through June 15; Count X, July 16 through July 31.

hours of services of an engineer and 465 hours of services of an engineer-in-training.

Appellant first argues that the delay in the government's bringing the June 1982 indictment covering acts occurring in 1979 was prejudicial. "Dismissal of the indictment may be required if the defendant shows at trial that pre-indictment delay caused substantial prejudice to his right to a fair trial and that the delay was an intentional device used by the government to gain a tactical advantage over the accused." *United States v. Matlock,* 558 F.2d 1328, 1330 (8th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977). After a hearing on appellant's motion to dismiss, the trial court found that appellant did not demonstrate that the government intended to delay to gain a tactical advantage or that appellant was prejudiced by the delay. We agree. After HUD referred the case to the FBI in October 1979, the FBI promptly began its investigation and did not complete the investigation until May 1982. "Investigative delay is fundamentally unlike delay undertaken by the government to gain tactical advantage over the defendant, and due process does not require a dismissal for pre-indictment investigative delay." *Id.* Furthermore, the only specific prejudice appellant alleged was that a potential defense witness moved out of the country. However, as the trial court noted, the witness moved in October 1979, at the very beginning of the FBI investigation and before the government could have reasonably been expected to indict appellant. We also note the trial court offered appellant the opportunity to continue the trial if he needed more time to prepare.

At trial Priscilla Eberle testified as a government witness. Ms. Eberle testified that from April 1977 until April 1979 she worked as appellant's secretary at Southwest and was familiar with his handwriting. She testified that appellant would draft the project invoices in long hand and bring the invoices to her for final typing. According to Ms. Eberle, appellant instructed her to sign the name of James Lofton on each invoice. Ms. Eberle testified that the company was small, that she was familiar with all the employees, and that during the time she was at Southwest, James Lofton was the only employee who was an engineer of whom she was aware.

James Lofton testified that he was a licensed engineer and had worked full-time as an engineer at Southwest until December 1978, when he resigned to take a full-time position as a city manager. Lofton, however, testified that he had agreed to work part-time as an engineer for Southwest until appellant could hire a full-time engineer. Lofton stated that despite his repeated requests that appellant hire a full-time engineer, appellant refused, stating that Lofton's part-time work and the services of an outside consulting engineer, Lynn Calton, were sufficient.

As noted earlier, during the period of time covered by the indictment, Southwest billed for 307 hours of services performed by an engineer. According to Lofton's earnings statement from Southwest for 1979, he earned approximately $1,500, which accounted for 150 hours. Lofton testified, however, that only a "few" of the 150 hours were attributable to his work on the project. Lofton also testified that he made a "side deal" with appellant to work additional hours. Lofton estimated he worked approximately 180 additional hours, but stated that he had never documented the hours, reported the hours, or had been compensated for the hours. At trial when shown completed time sheets bearing his signature for the periods of February 16 through February 30, 1979, and March 16 through March 31, 1979, Lofton stated he had not prepared the time sheets nor had he signed them.

In addition, Lofton related that at about 10 p.m. on October 29, 1979, appellant telephoned him and requested that he come to Southwest's office. Appellant informed Lofton that the City Council had questioned some of the invoices and that the employee time sheets did not support the invoices. When Lofton arrived at the office, appellant and Southwest's accountant were present and had with them invoices, time

sheets and "recap summaries." Appellant instructed Lofton to alter his time sheets to increase his number of hours worked on the project by adding his "side deal" hours and hours worked on other projects. Appellant offered Lofton $1,000. Lofton declined the money but altered his time sheets in accordance with appellant's instructions. Lofton also testified that he observed appellant tear up and discard the original time sheets.

Lynn Calton testified that he was hired by appellant as an outside consulting engineer to perform certain engineering work on the project. Calton, however, stated that it was not until October 20, 1979, that he first informed appellant of the hours spent on the project. On October 20, Calton billed Southwest for 70 hours of engineering services and on December 4 billed for 16 additional hours.

Former employees, including Eberle and Lofton, testified that Peter Johnson was the only engineer-in-training at Southwest during the period covered by the indictment. Johnson testified that he was employed by Southwest as an engineer-in-training from June 4, 1979, until January 4, 1980. Although Southwest billed for 317 hours of services performed by an engineer-in-training from February 1 through May 31, 1979 (Counts I–VIII), Lofton testified that he did no work for Southwest during that period because he had not yet been hired. Further, when the government asked Johnson to compare the hours he recorded on his time sheets with the hours billed on the invoices for services of an engineer-in-training from June 1979 through October 1979, Johnson found great discrepancies. For the time period from June 1 through June 15 (Count IX), Southwest billed for 84 hours of services of an engineer-in-training, but Johnson had recorded no hours on his time sheets. Johnson added that he was certain he worked no hours on the project at any time in June 1979 because he had worked almost exclusively on another assignment. For the time period from July 16 through July 31 (Count X), Southwest billed for 64 hours of services of an engineer-in-training, but again Johnson had recorded no hours on his time

sheets. Johnson also testified that after he discovered one of his time sheets had been altered, he made copies of his original time sheets and retained the copies.

Other Southwest employees testified concerning irregularities in invoices and time sheets concerning the project but beyond the scope of the indictment. Employees testified that invoices billing for services of a survey crew did not match the time sheets for the crew members and that appellant had instructed employees to alter their time sheets to add vacation hours, hours worked for other projects and hours spent cleaning the office to hours worked on the project.

Virginia Jackson, appellant's mother, testified on his behalf. Mrs. Jackson was a bookkeeper at Southwest and testified that she was responsible for preparing the "recap summaries" and invoices. She testified that appellant had little, if anything, to do with preparation of the invoices and was out of town during much of the time period covered by the indictment.

Appellant alleges that the evidence was insufficient to sustain his conviction under 18 U.S.C. § 1001. "[T]he essential elements of an offense under 18 U.S.C. § 1001 include (1) making, or causing to be made, a false statement in relation to a matter within the jurisdiction of an agency of the United States; (2) knowledge that the statement was false; (3) knowing and willful conduct on the part of the defendant;" and (4) that the statement was material. *United States v. Lanier,* 578 F.2d 1246, 1249 (8th Cir.), *cert. denied,* 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978) (footnote omitted).

■ Appellant asserts that there is no evidence that he made or caused to be made the statements in the invoices, that the billings for the services of an engineer and engineer-in-training were false, and that he acted knowingly and willfully. We disagree. On appeal we must view the evidence and all reasonable inferences therefrom in the light most favorable to the jury verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

In doing so, we find that the evidence is ample to support the jury's verdict. Appellant's secretary testified that appellant personally prepared the invoices. Former employees testified that James Lofton was the only engineer on the project and that Peter Johnson was the only engineer-in-training on the project during the relevant time period. Lofton testified that he worked only a "few" of the 150 reported hours on the project, whereas appellant billed for 307 hours of services of an engineer. Johnson testified that he did not work at Southwest from February 1979 through May 31, 1979 (Counts I–VIII) and did not work on the project hours for the periods from June 1 through June 15 (Count IX) and from July 16 through July 31 (Count X), whereas appellant billed for 465 hours of services of an engineer-in-training. Lofton testified that appellant instructed him to alter his time sheets to be in accordance with the invoices. On similar evidence, this court recently upheld convictions under 18 U.S.C. § 1001. *See United States v. Richmond,* 700 F.2d 1183 (8th Cir.1983) (costs of other projects billed to federally funded project; time summaries not supported by employee time sheets; altered employee time sheets conflicted with employees' own time records; defendant instructed employees to alter time sheets to be in accordance with invoices).

Appellant also alleges that the trial court committed reversible error in admitting into evidence testimony of employees concerning irregularities in invoices and time sheets outside the scope of the indictment and other "bad act" evidence. The government argues that the evidence was admissible under Fed.R.Evid. 404(b) to show identity and lack of mistake. We agree. *See United States v. Evans,* 697 F.2d 240, 247–48 (8th Cir.1983) (discussing the requirements of admissibility of "bad acts" evidence under Fed.R.Evid. 404(b)).

Last, appellant challenges the trial court's failure to submit a "good faith" jury instruction. On appeal appellant asserts that he acted in "good faith" because he acted in conformity with the custom of the industry and his interpretation of his contract with the City. Appellant concedes that he did not request a "good faith" instruction but urges that it was "plain error" for the trial court to fail to submit such an instruction on the evidence presented. There is no merit to appellant's argument.

Accordingly, the judgment is affirmed.