UNITED STATES of America, Appellee,

v.

Henry Howard BASWELL, Appellant.

No. 84–2552.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1986.

Decided June 10, 1986.

---

N. Alan Lubin, Memphis, Tenn., for appellant.

Linda Lipe Glenghorn, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and MURPHY,* District Judge.

McMILLIAN, Circuit Judge.

Henry Howard Baswell appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas upon a jury verdict finding him guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841. The district court sentenced him to a term of one year and one day imprisonment and a special parole term of three years. For reversal appellant argues that the district court erred: (1) in denying his motion to suppress all evidence seized pursuant to a warrantless search of a residence; (2) in denying his motion to suppress all statements he allegedly made to government agents; and (3) in finding there was sufficient evidence for a jury to convict him of possession with intent to distribute. For the reasons discussed below, we affirm the judgment of the district court.

Viewing the evidence in the light most favorable to the government, *United States v. Clark*, 743 F.2d 1255, 1257 (8th Cir.1984) (motion to suppress); *United States v. Jackson*, 714 F.2d 809, 812 (8th Cir.1983) (sufficiency of evidence to sustain jury verdict), we summarize the facts as follows.

Appellant had a key and free access to a vacation house[2] partly owned by his friend

---

* The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by special designation.

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

2. The vacation house was a private residence owned by B & P Construction Company, a partnership. Jack Bowie was the principal partner. Bowie died on October 7, 1984. The suppression hearing on the search of the house occurred several weeks later on October 22, 1984.

Jack Bowie. Bowie paid Bob Williams, who lived nearby, to perform maintenance and custodial work around the house. Williams had his own key to the house.

On May 27, 1984, appellant approached Williams and asked him to open the house. Williams did so and subsequently observed from a distance appellant hurriedly walking into the house carrying a green bank pouch. Appellant placed the pouch in the attic where he thought it would be hidden; appellant acted without Bowie's knowledge. Appellant locked the door upon leaving the house. After appellant departed, Williams entered the house and looked around. He ultimately located the pouch in the attic, opened it, and saw three plastic bags containing a white powder which he suspected to be cocaine. Williams replaced everything as he had found it, returned to his home, and called a friend who was a former narcotics agent. Williams' friend notified the Drug Enforcement Administration (DEA).

DEA agents Morris and Lowery and police officer Burks soon contacted Williams. Williams informed them he was caretaker of the vacation house and had a key and then explained how and where he had located the pouch. Williams let Morris into the house and directed him to the pouch, which Morris retrieved from its hiding place in the attic. The agent's field test of the powder was positive for cocaine.

After the agents put the house under surveillance, Williams notified them that appellant might be leaving the area soon. Morris and Burks went to appellant's place of employment, identified themselves, and informed him that they suspected he had hidden the cocaine they found. Appellant suggested that they go somewhere more private to talk. The three men entered the agents' car to go to another location. During the drive, appellant volunteered that the cocaine was his, but explained that it was strictly for his personal use and that

he was not a dealer. After the car stopped, appellant made an oral statement and, later, another statement which was reduced to writing by Morris and signed by appellant. This written statement contained no indication that appellant had been informed of his *Miranda* rights.[3] Subsequent analysis of the seized powder revealed it to be 83.1 grams, or about 2.9 ounces, of 64% pure cocaine.

Appellant was indicted by a federal grand jury on August 20, 1984, for possession with intent to distribute cocaine. Appellant made pre-trial motions to suppress the evidence seized as a result of the search of Bowie's house and to suppress all the statements he made to government agents. A hearing on the motions was held on October 22, 1984. The district court ruled that the seized evidence and appellant's initial oral statement were admissible. A jury trial on October 31, 1984, resulted in a guilty verdict. This appeal followed.

Appellant initially challenges the legality of the search of the vacation house and the seizure of the cocaine. The district court found, and the government concedes, that appellant's relationship to the house and its principal owner created in him a legitimate expectation of privacy in the premises sufficient to entitle him to challenge the legality of the search and seizure. Nor is there any question concerning the voluntariness of Williams' consent. The sole issue is whether Williams' third-party consent is binding upon appellant.

■ Before we consider this issue on the merits, we must first consider what is the proper standard of review, which is dependent on whether the issue is one of fact or law. It is not clearly settled whether the determination of authority to consent is a factual finding or a legal conclusion. Most cases merely hint at the applicable standard of review without directly resolving

---

**3.** The agents and appellant later disagreed as to

whether or at what point he had been so in-

the matter.[4] In *Marvin v. United States,* 732 F.2d 669 674 (8th Cir.1984), this court upheld the findings of the district court that a third party, a renter in a second floor bedroom, had the authority to consent to a search of a portion of the house not covered by the search warrant but reversed the district court's finding that the renter could consent to a search and seizure of records found in the same area. The court implicitly recognized that third-party consent is a factual issue. We now expressly hold that such determinations are factual issues and therefore reviewable under the clearly erroneous standard.[5] *See, e.g., United States v. Ramey,* 711 F.2d 104, 107 (8th Cir.1983).

Third-party consent to search has usually been given by persons who jointly occupy or possess property. *E.g., Marvin v. United States,* 732 F.2d at 675 (renter); *United States v. Reeves,* 730 F.2d 1189, 1193–94 (8th Cir.1984) (consent of deputy sheriff for search of office jointly occupied by deputy and sheriff). Thus the rules concerning consent searches relate primarily to searches authorized by a co-occupant.

This court has stated that a consent search is valid if it is shown "that permission to search was obtained from a third party who possessed 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Marvin v. United States,* 732 F.2d at 675, *citing United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (footnote omitted). Common authority exists where there is

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

This court has not previously decided how the above-quoted rule is to be applied when the third party does not have "mutual use" and "joint control for most pur-

---

formed.

4. *See, e.g., United States v. Matlock,* 415 U.S. 164, 166, 94 S.Ct. 988, 990, 39 L.Ed.2d 242 (1974) (phrases issue in terms of whether evidence of third-party's voluntary consent was "legally sufficient to render the seized materials admissible" against defendant); *Marvin v. United States,* 732 F.2d 669, 675–76 (8th Cir.1984) (does not disturb what are referred to as "findings" of voluntary third-party consent and common authority over rented residences); *United States v. Reeves,* 730 F.2d 1189, 1194 (8th Cir. 1984) (agrees with district court's finding that deputy sheriff had common authority over sheriff's office in absence of any evidence mandating contrary inference); *United States v. Impink,* 728 F.2d 1228, 1232 (9th Cir.1984) (acknowledges uncertainty as to applicable standard of review, but declines to resolve question because "would reverse under any standard"); *United States v. Buettner-Janusch,* 646 F.2d 759, 765 (2d Cir.1981) (agrees with district court's "findings" in applying Second Circuit's *Gradowski* test for effect of third-party consent), *cert. denied,* 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981); *United States v. Gradowski,* 502 F.2d 563, 564 (2d Cir.1974) (holds evidence justified "finding" of consent to search; consent by third party "with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that ac-

cess, express or implied," validates search). On the other hand, third-party authority to consent has also been treated as a legal question and conclusion. *See United States v. Block,* 590 F.2d 535, 540, (4th Cir.1978); *United States v. Heisman,* 503 F.2d 1284, 1288–89 (8th Cir.1974).

5. In *United States v. McGinnis,* 783 F.2d 755, 758 (8th Cir.1986) (*McGinnis*), this court recently reaffirmed our previous holding that the voluntariness of a consent to search is a factual issue. The court held that the Supreme Court's decision in *Miller v. Fenton,* —— U.S. ——, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (*Miller*), did not control *McGinnis.* This court distinguished *McGinnis,* wherein the voluntariness of a search under the fourth amendment was held to be a question of fact from *Miller,* where the voluntariness of a confession under the fifth amendment was held to be a question of law. We likewise do not believe that *Miller* requires this court to hold that the authority of a third party to consent is a question of law. Out of an abundance of caution, however, we have reviewed de novo the question of Bob Williams' authority to consent to a search and seizure. We conclude that Williams had the authority to consent to a search of the vacation house and a seizure of the cocaine hidden in the house.

poses." In this case, appellant and Williams did not have "mutual use" of the premises. The evidence showed that appellant was a close friend of the principal owner of the house and that he had permission to stay in the house and use it fully and freely for his own benefit. Williams on the other hand had access to the house for limited purposes. He could enter the house to clean and repair upon request and for compensation; he could not use the house for his own benefit. Because of the disparity between appellant's and Williams' right to access and use of the vacation house, Williams' consent may not be based on his possession of common authority as a joint occupant.

Nonetheless, Williams' consent may be valid under an agency theory of authority. In *Stoner v. California*, 376 U.S. 483, 488–89, 84 S.Ct. 889, 892–93, 11 L.Ed.2d 856 (1964), the Supreme Court recognized that an agent could consent to a search, *id.*, but also warned against "strained applications of the law of agency or by unrealistic doctrines of apparent authority." *Id.* at 488, 84 S.Ct. at 892.

■ The district court found an implied agency relationship existed between Williams and Bowie. The district court further found that Williams, as a person who was "expected to kind of look out for the property," had the right to enter the house to investigate suspicious circumstances, and that he had "implied authority from Mr. Bowie" to authorize the entry of investigating officers if he thought someone was doing something unlawful without Bowie's knowledge. Upon reviewing the evidence before the district court, we cannot say that the district court clearly erred in finding that Williams had implied authority[6] to consent to the entry and search of the vacation house. Thus, the district court did not err in denying the motion to suppress the evidence.

Nor do we find error in the district court's refusal to suppress all of appellant's statements to the government agents. The district court found, after hearing the testimony and making credibility determinations, that the agents informed appellant that he did not have to talk with them; that appellant agreed to talk with them and they entered the agents' car at appellant's suggestion; that appellant was the focus of the investigation but not yet under arrest; and that appellant made voluntary non-custodial statements during the car ride that were not in response to any interrogation. The district court further found that once appellant stated that the cocaine was for his personal use and that he was not a dealer, appellant was, in effect, under arrest because the agents would have prevented his leaving the car; that *Miranda* warnings were then required before further questioning; and that because the government did not prove they were given, appellant's subsequent oral and written statements were inadmissible.

■ "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam). The record indicates that appellant was not "deprived of his freedom of action in any significant way" before making his initial statements. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). After the agents informed appellant that he was under no obligation to talk to them, appellant suggested going somewhere more private in the agents' car, and he voluntarily entered the car. Although the agents initiated contact with appellant, they were not interrogating him when he made statements during the car ride. We agree that the circumstances did not amount to a custodial interrogation; thus, appellant's initial statements obtained without *Miranda* warnings were properly admitted. *See United States v. Jones*, 630 F.2d 613, 616 (8th Cir.1980) (per curiam).

Appellant's final point on appeal is that there was insufficient evidence to sustain a verdict of guilty to the charge of posses-

---

**6.** Appellant recognized Williams' authority by requesting Williams to open the door for him.

sion of a controlled substance with intent to distribute. He argues that the only evidence of "intent to distribute" is the amount seized and Officer Burks' testimony that appellant admitted (while in the car with Burks and Morris) that he planned to use the cocaine to procure "sexual favors." Appellant attacks Burks' credibility in light of Agent Morris' failure to testify to this alleged admission.

█ In reviewing a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences therefrom in the light most favorable to the government. *E.g., United States v. Hudson,* 717 F.2d 1211, 1213 (8th Cir.1983). It is the role of the jury and not the reviewing court to evaluate the credibility of witnesses and to weigh their testimony. *Id.* The jury could have reasonably believed that Burks' testimony regarding quantity and value was evidence of an intent to distribute. Moreover, possession of even a relatively small quantity of cocaine is sufficient to show intent to distribute the drug when there is other evidence of such an intent. *United States v. Koessel,* 706 F.2d 271 (8th Cir.1983) (26.09 grams of cocaine); *United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) (5 grams of cocaine). In the instant case, Officer Burks testified that appellant stated that the cocaine was his and that he used it to procure sexual favors.[7] We are satisfied that there was sufficient evidence to support the jury's verdict.

The judgment of the district court is affirmed.

JOHN R. GIBSON, Circuit Judge, concurring.

I concur in the judgment of the court affirming the conviction, but write separately because I believe that the court need not have boldly reached out to examine the question whether third-party consent is a factual issue, subject to review under the clearly erroneous standard. The court expressly concludes, after de novo review, that Williams had the authority to consent to the search of the vacation house. *See ante* at 758 n. 5. We therefore need not entertain this question of admitted difficulty, one which the parties did not address. I believe that some unnecessary conflict is creeping into our opinions following *Miller v. Fenton,* — U.S. —, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), *see United States v. McGinnis,* 783 F.2d 755, 759 n. 2 (8th Cir. 1986), and I would refrain from deciding more than we need to decide. *Cf. United States v. Impink,* 728 F.2d 1228, 1232 (9th Cir.1984) (pre-*Fenton* decision leaving this precise question unresolved because court would affirm under either standard). When the issue is squarely presented, and we have the benefit of counsels' contributions, this difficult question can be given the careful attention and deliberate consideration it deserves.

---

7. Distribution under 21 U.S.C. § 841(a)(1) includes not only the sale of a controlled substance but also the non-commercial transfer from one person to another. *United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) (sharing of cocaine with a friend constitutes distribution); *United States v. Johnson,* 481 F.2d 645, 646–47 (5th Cir.1973) (per curiam) (delivery by "procuring agent" is distribution).