46 F.3d 1141
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard FREDERICKS, Plaintiff-Appellant,
v.
Gary WRIGHT; George Burke; City of Forest Grove; and John
Doe, a fictitious person, Defendants-Appellees.
 No. 94-35494.
 United States Court of Appeals, Ninth Circuit.
 Submitted: Jan. 11, 1994.*
Decided: Jan. 20, 1995.
 
 Before: WALLACE, Chief Judge, HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richard Fredericks appeals the district court's grant of summary judgment in favor of the City of Forest Grove and various Forest Grove police officers in his 42 U.S.C. Sec. 1983 and pendent state law action. In his complaint, Fredericks alleged that the officers violated his fourth amendment rights by arresting him in his home without an arrest warrant. The district court found that the officers were entitled to qualified immunity and that the City of Forest Grove was not liable because there had been no constitutional violation by the defendant officers. The court also found that Fredericks had failed to state a claim under Oregon state tort law for the intentional or reckless infliction of emotional distress. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 On appeal Fredericks contends that the district court (1) improperly granted summary judgment in favor of the defendants on qualified immunity grounds; (2) erred by dismissing the action against the city; and (3) erred by dismissing the pendent state tort law claim.
 
 
 4
 * Background
 
 
 5
 Fredericks is the co-owner of S & J Chevrolet, an automobile dealership in Forest Grove, Oregon. On March 20, 1992, Fredericks and his partner John Schaefers went to the home of Sam Fuller, a former employee of S & J Chevrolet. A physical altercation ensued, and Fuller called the police, reporting that he was being assaulted. Defendants Gary Wright and George Burke, Forest Grove police officers, were dispatched. When Wright and Burke arrived they found Fredericks and Schaefers outside the house and Fuller locked inside. Officer Burke entered the house and spoke with Fuller. He observed that Fuller was frightened, that the interior of the house was in disarray, that Fuller's nose was bleeding, and that his glasses were broken. In response to Officer Burke's questioning, Fuller said that he was afraid to say what happened and did not want to press charges, but that Burke could contact the Oregon Attorney General's office to find out what was going on. Officer Burke told Fredericks and Schaefers that Fuller did not want to press charges, but only wanted them to leave, which they did.
 
 
 6
 Shortly thereafter, Burke contacted an investigatory agent at the Oregon Attorney General's Office who told him that S & J Chevrolet was under investigation and opined that Fredericks and Schaefers probably thought that Fuller was cooperating with the investigation.
 
 
 7
 Burke then spoke again with Fuller, who told Burke that he had changed his mind and wanted to press charges against Fredericks and Schaefers. Fuller also told Burke that Fredericks and Schaefers threatened him, forced open his door, pulled him outside, and hit him in the face.
 
 
 8
 On the evening of March 21, 1992, Burke and Wright, both in uniform, went to Fredericks's house. Burke knocked on the door. Two different versions of what happened next were offered.
 
 
 9
 According to Fredericks, he heard a knock on the door and asked his friend, Steve Thompson, to "see who's there." Thompson answered the door. Fredericks then walked to the door and identified himself and was placed under arrest and asked to step outside the house. Neither Fredericks and Thompson recollect that the officers actually entered the house, but they are not certain.
 
 
 10
 According to Burke, when Thompson answered the door, Burke asked if they could come in. Thompson said they could. Burke did not know Thompson and asked for Fredericks. Before Thompson could respond, Fredericks appeared, and Burke placed him under arrest.
 
 
 11
 A grand jury subsequently indicted Fredericks and Schaefers for the crimes of burglary in the first degree, assault in the fourth degree, harassment, and criminal mischief stemming from the events at Fuller's house. Subsequently, Fredericks and Schaefers entered into a civil compromise with Fuller, paying him $9,900, and the criminal charges were dismissed.
 
 II
 Analysis
 A. Standard of Review
 
 12
 We review a district court's grant of summary judgment de novo. Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993). Summary judgment is appropriate if there is no genuine issue of material facts and the moving party should prevail as a matter of law. See Fed. R. Civ. P. 56(c).
 
 B. Qualified Immunity
 
 13
 Police officials are entitled to qualified immunity in a Sec. 1983 action if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993) (a police officer is immune from suit if "in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful"). In deciding whether officials are entitled to qualified immunity, we must determine (1) whether the right was clearly established at the time of the alleged violation, and (2) whether, in light of that law, a reasonable official could have believed his conduct to be lawful. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994). Whether the law is "clearly established" is a question of law, which the court of appeals reviews de novo. Elder v. Holloway, 114 S. Ct. 1019, 1023 (1994).
 
 
 14
 Here, the district court found that while there was a dispute as to the events surrounding the arrest, it did not create a genuine issue of material fact because no violation of a clearly established right occurred under either scenario. We agree.
 
 1. Fredericks's "Doorstep" Version
 
 15
 According to Fredericks's and Thompson's statements, neither officer entered the house. Instead, when Fredericks appeared at the doorway and asked, "how can I help you?," Burke informed him that he was under arrest and asked him to step outside, which Fredericks did.
 
 
 16
 In Payton v. New York, the Supreme Court stated that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."' 445 U.S.C. 573, 585-86 (1980) (quoting United States v. United States District court, 407 U.S. 297, 313 (1972)). Following this reasoning, we have held that it is not a fourth amendment violation for government officers to knock on an individual's door and to arrest the individual when the door is opened, even if the individual is still standing at the doorway. See United States v. Whitten, 706 F.2d 1000, 1015 (9th Cir. 1983) ("a doorway ... is a public place;" no warrant was required when DEA agents knocked on defendant's door and immediately arrested him when he opened the door); United States v. Botero, 589 F.2d 430, 432 (9th Cir. 1978), cert. denied, 441 U.S. 944 (179); see also United States v. Santana, 427 U.S. 38, 42 (1976) (defendant's doorway was public area, allowing warrantless arrest of defendant standing there); United States v. Berkowitz, 927 F.2d 1376, 1386-87 (7th Cir. 1991) ("Payton prohibits only a warrantless entry into a home, not a policeman's use of his voice to convey a message of arrest from outside the home"); Duncan v. Storie, 869 F.2d 1100, 1101-02 (8th Cir.) ("[t]he doorway of an individual's home or apartment or hotel room may be a public place for purposes of making a warrantless arrest if the individual has come to stand in the doorway voluntarily"), cert. denied, 493 U.S. 852 (1989); United States v. Mason, 661 F.2d 45, 47 (5th Cir. 1981) (no fourth amendment violation when defendant came to doorway as agents approached the house and was then placed under arrest); United States v. Carrion, 809 F.2d 1120, 1128 (5th Cir. 1987) (no fourth amendment violation when government agents knocked on defendant's door and arrested him when he opened the door).[1]
 
 
 17
 Given the state of the law on this issue, the district court correctly concluded that, as of March 1992, it was not clearly established that a warrantless arrest of an individual who voluntarily appears at the doorway of his residence violates the fourth amendment. See Whitten, 706 F.2d at 1015; Botero, 589 F.2d at 432; Berkowitz, 927 F.2d at 1386-87; Duncan, 869 F.2d at 1101-02. Moreover, the officers could have reasonably believed that their actions were lawful, and thus the officers are entitled to qualified immunity. See Harlow, 457 U.S. at 818; Mendoza, 27 F.3d at 1360.
 
 2. Burke's "Foyer" Version
 
 18
 Under this version, the arrest took place inside the house in the foyer. According to Burke, he knocked on the door. Fredericks stated that he asked Thompson to "see who's there."[2] Thompson answered and Burke asked Thompson if they could come in. Thompson said that they could. Once inside, Burke asked if Fredericks was there, but before Thompson could respond, Fredericks appeared and asked, "how can I help you?" Burke then placed him under arrest.
 
 
 19
 On appeal, Fredericks contends that Thompson was not his agent and that Thompson's consent, allowing the officers to enter Fredericks's home, was invalid and thus his warrantless arrest inside the residence was nonconsensual and violated the warrant requirement of the fourth amendment. This contention lacks merit.
 
 
 20
 First, as the district court observed, and Fredericks concedes, consent may be valid under an agency theory. See Stoner v. California, 376 U.S. 483, 488-89 (1964); United States v. Baswell, 792 F.2d 755, 759 (8th 1986) ("consent may be valid under an agency theory of authority").
 
 
 21
 Here, Fredericks asked Thompson to see who was at the door. In response, Thompson opened the door and consented to the officers' entry into the foyer of the house. Given these circumstances, the district court properly found that Thompson was acting as the agent for Fredericks to the extent he allowed the officers into the foyer of the house. See oner, 376 U.S. at 488-89; Baswell, 792 F.2d at 759.
 
 
 22
 Second, even if Thompson were not acting as Fredericks's agent, the fourth amendment is not violated when a law enforcement officer conducts a warrantless entry based on a reasonable belief that the consenting party has the authority to consent. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); United States v. Yarbrough, 852 F.2d 1522, 15533 (9th Cir.) ("[e]ven if the consenting third party does not in fact possess actual authority to consent, a warrantless search [and seizure] may be justified when the authorities have reasonable grounds to believe the consentor has apparent authority to consent"), cert. denied, 488 U.S. 866 (1988); United States v. Hamilton, 792 F.2d 837, 841 (9th Cir. 1986); United States v. Sledge, 650 F.2d 1075, 1077-78 (9th Cir. 1981). The pertinent inquiry is whether the facts available at the moment would cause a person of "reasonable caution" to believe that the consenting party had authority over the premises." Illinois, 497 U.S. at 177-78; see also United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir. 1992) (validity of government agent's reliance on third party's apparent authority to consent to search or seizure "rests entirely on the reasonableness of the officer's belief").
 
 
 23
 Here, Thompson appeared at the door in response to Burke's knock, responded affirmatively to the officer's requests to come in, and did not indicate that he was a guest in the house. Moreover, upon entering, the officers were immediately met by Fredericks, who did not object to the officers' presence in the foyer, but instead asked, "how can I help you?" Given these circumstances, the officers could have reasonably believed that their entrance into the foyer of the house was permissible. See Illinois, 497 U.S. at 177-78.
 
 
 24
 Accordingly, we affirm the district court's determination that the officers were entitled to qualified immunity. See Harlow, 457 U.S. at 818; Mendoza, 27 F.3d at 1360; Act Up!/Portland, 988 F.2d at 871.[3]
 
 C. City of Forest Grove
 
 25
 In Fredericks's reply brief, he concedes that "the city's liability stands or falls on the officer's liability." Appellant's Reply Brief at 6. We agree and affirm the district court's judgment as to the city. See Los Angeles v. Heller, 475 U.S. 796, 799; Forrester v. City of San Diego, 25 F.3d 804, 808 (9th Cir. 1994).
 
 D. Pendent State Tort Claim
 
 26
 The district court found that Fredericks had failed to state a claim for intentional or reckless infliction of emotional distress arising out of the arrest and several other alleged incidents of harassment.[4] Under Oregon law, to state a claim for intentional or reckless infliction of emotional distress, the plaintiff must allege that the defendant performed acts which constituted an extraordinary transgression of the bounds of socially tolerable conduct. See Madani v. Kendall Ford, Inc., 818 P.2d 930, 933-34 (Or. 1991); Hammond v. Central Lane Communications Ctr., 816 P.2d 593, 599 (Or. 1991); see also Rice v. Comtek Mfg. of Oregon, Inc., 766 F. Supp. 1539, 1543 (D. Or. 1990) (Oregon courts require "an extremely outrageous transgression of social norms" in order for a plaintiff to state a claim for intentional infliction of emotional distress).
 
 
 27
 Here, none of the incidents alleged by Fredericks taken individually or as a whole constitutes extraordinary transgressions of the bounds of socially tolerable conduct. Moreover, as Fredericks observes in his reply brief, his "arrest by Officer Burke is the central part of his state-law claims of intentional or reckless infliction of emotional distress." Appellant's Reply Brief at 6. Given these circumstances, the district court did not err by dismissing Fredericks's state tort claims.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4. Accordingly, Frederick's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 This is not a case in which the government agents, either through the use or threat of force or a claim of right, coerced the plaintiff to appear at the doorway or outside the residence in order to make the arrest. Accordingly, Fredericks's reliance on cases involving that type of scenario are not persuasive. See, e.g., United States v. Al-Azzawy, 784 F.2d 890 (9th Cir. 1985) (we held that there can be "constructive entry" and a fourth amendment violation when police surround defendant's home with weapons drawn and order defendant to leave the house and then arrest him outside without a warrant), cert. denied, 476 U.S. 1144 (1986); United States v. Johnson, 626 F.2d 753, 755-56 (9th Cir. 1980) (fourth amendment violation when government agents with weapons drawn used fictitious names to get defendant to open door and subsequently gain access to the premises), aff'd on other grounds, 457 U.S. 537 (1982); see also Elder v. Holloway, 975 F.2d 1388, 1391 (9th Cir. 1991) (without an arrest warrant, police surrounded house and ordered individual out of house to be arrested), rev'd on other grounds, 114 S. Ct. 1019 (1994)
 
 
 [2]
 Thompson does not remember being asked to open the door by Fredericks
 
 
 [3]
 To the extent Fredericks argues that, as of March 1992, the law was clearly established that a warrantless arrest within the home violated the fourth amendment, even if the officers had probable cause and consent to enter the home, this argument is without merit
 In Bryant v. United States Treasury Dep't, Secret Serv., we held that the law on this issue "was not clearly established." 903 F.2d 717, 723 (9th Cir. 1990), overruled on other grounds, 502 U.S. 224 (1991). Moreover, we observed that "the relevant case law strongly suggested that the officers could have believed that their warrantless arrest was lawful so long as they had probable cause and consent to enter the residence." Id.; see Payton v. New York, 445 573, 576 (1980) ("the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest") (emphasis added).
 
 
 [4]
 In his complaint, Fredericks alleged that the defendants harassed him driving by his house, following him through Forest Grove without reasonable suspicion or probable cause, and issuing him a ticket for parking too far from the curb