Argued November 29, 1965, affirmed February 9, 1966

# STATE OF OREGON *v.* COOK
411 P. 2d 78

*Orval N. Thompson* and *Harrison M. Weatherford,*
Albany, argued the cause for appellant. On the briefs
were Weatherford, Thompson & Horton, Albany.

*Frank D. Knight,* District Attorney, Corvallis,
argued the cause for respondent. With him on the
brief was Edward R. Hall, Deputy District Attorney,
Corvallis.

Before McALLISTER, Chief Justice, and PERRY,
SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB,
Justices.

DENECKE, J.

The defendant was indicted for forcible rape.
He was found guilty of assault with intent to commit
rape. He appeals.

An acquaintance of the defendant picked up the prosecuting witness, a girl 27 years old, in Portland. The girl, the acquaintance, the defendant, and another man, O'Rourke, spent the evening drinking. They then went to the defendant's family's farm in Benton county. The family was out of the state. The rape by the defendant and the other men is alleged to have occurred at the farm. A caretaker, Warman, witnessed the activity in the farmhouse and the next morning reported it. He did not know the name of the girl. The defendant was the only man Warman knew.

Three days after the alleged rape the defendant was questioned at his place of employment in Portland by law enforcement officials. He told them he did not know the girl's name, but he named O'Rourke as having been along. O'Rourke was then questioned, and from the information he gave them the officials were eventually able to learn the identity of the girl.

I

At trial the defendant moved to suppress the testimony of the girl upon the ground that her whereabouts became known to the state by the interrogation of the defendant and O'Rourke and this interrogation was contrary to the Constitution of the United States because the persons questioned had not been advised of their right to remain silent and of their right to counsel. The defendant argues that the girl's testimony is "fruit of the poisonous tree" because it became available by exploitation of unconstitutional interrogation. In this regard defendant relies upon *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L ed2d 441 (1963).

■ It is not necessary for us to decide here whether the "fruit-of-the-poisonous-tree" principle applies to evidence obtained by exploitation of an interrogation

encompassed by *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965), and in which the advice required was not given. We find *State v. Neely,* supra, inapplicable because the defendant was not the focal suspect of a crime; he "was not under arrest or any other form of custody at the time" the officers obtained information from the defendant which eventually led to their learning the identity of the girl. *State v. Evans,* 241 Or 567, 407 P2d 621, 623 (1965).

The facts are that three officers came to the defendant's place of employment about 11:00 a.m. They had no warrant of arrest. They asked management if they could interview the defendant. A supervisor brought the defendant to the plant's conference room. The officers told the defendant that they wanted to talk to him about a girl who was with him last Sunday. The defendant said that he would be glad to talk as he did not have anything to hide. They asked her name and defendant said that he did not know it. They asked if he had raped her and he said no. He admitted that he had been with a girl in Benton county. The defendant said the girl had threatened to commit suicide several times that day and her dress was torn when she tried to jump out the window, and the defendant had grabbed her to keep her from jumping. The defendant said that O'Rourke, who also worked there, had been with him. The officers asked management if they could talk to O'Rourke and they asked the defendant to stay in the conference room until O'Rourke arrived. When O'Rourke arrived, the defendant went back to work and stayed there until 5:00 p.m., when other officers came and asked him to come with them down to the police station, where they put him in confinement. The defendant was in the plant conference room from 15 to 20 minutes.

■ This was not an arrest. "Arrest is the taking of a person into custody so that he may be held to answer for a crime." ORS 133.210. We also hold that it was not "custody." As we said in *State v. Evans, supra* (407 P2d at 624), "It is probably not possible in a single case to lay down an absolute test as to what is and what is not custody, for it may well be a functional test." Consistent with the objective sought in *State v. Neely, supra,* custody should be defined as at least requiring some sort of detention effected by some physical or psychological means. It is the coercion inherent in that detention that is a reason for the *Neely* requirement. In this instance there was no evidence of detention prior to the defendant's informing the officers that O'Rourke was with him. It may be possible to construe defendant's testimony that the officers told him to stay in the conference room until O'Rourke arrived as detention. However, this occurred after the questioning had been completed.

In *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed2d 977 (1964), the majority specifically said that it was not intending to hamper the police from "gathering information from witnesses and by other 'proper investigative efforts.'" (378 US at 492) The officers in this case were using such methods to attempt to locate the girl and determine if any crime had been committed.

## II

The court received into evidence, over defendant's objection, certain items which were taken by an officer from the farmhouse. The items were parts of the girl's clothing, a vacuum cleaner, beer bottles, and a billfold belonging to one of the other men. No search warrant was obtained to enter the farmhouse. The officers accompanied Warman to the house and he

unlocked it and let them in. The defendant contends the evidence is inadmissible because it was secured by an illegal search and seizure.

Assuming, without deciding, that the defendant has standing to object to the introduction of this evidence, we hold the evidence was not the product of an illegal search and seizure.

■ Warman was authorized by the owners of the farmhouse to live there for the 10 or 15 days they were going to be gone. Warman had a key; he was to care for the property; he had unqualified access.

Warman's voluntary admission of the officers into the farmhouse made the search reasonable.

■ *Stoner v. California,* 376 US 483, 84 S Ct 889, 11 L ed2d 856, reh den 377 US 940, 84 S Ct 1330, 12 L ed2d 303 (1964), is not to the contrary. There, it was held that a hotel night clerk's consenting to the police entering a guest's room did not make the search valid. A hotel guest is entitled to treat his room as his private domain subject only to the hotel personnel entering the room, at times convenient for the guest, in the performance of their duties. In this case, while the owners were gone, Warman was in complete control of the premises.

In *State v. Broadhurst,* 184 Or 178, 251, 196 P2d 407, cert den 337 US 906, 69 S Ct 1046, 93 L ed 1718 (1949), we held a tenant could consent to the search of the house in which the tenants were living.

■ The defendant also contends that the evidence was inadmissible because it was only evidence and was not property used, or intended to be used, as a means of committing the crime. *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962), held that a legal search was restricted by statute to property used or intended to be used in the commission of a felony. ORS 141.010.

This statute was amended by Oregon Laws 1963, ch 375, § 1, p 558, to include property "which would constitute evidence of, the crime." The statute is expressly applicable only to searches under a search warrant, but *State v. Chinn,* supra (231 Or at 275), held the same rule governing searches under a warrant should govern searches without a warrant. The defendant contends that the statute as amended is contrary to the Fourteenth Amendment because it now includes property "which would constitute evidence of, the crime."

The majority in *State v. Chinn,* supra (231 Or at 276, n 10), expressly did not pass upon the point now raised by the defendant. *Gouled v. United States,* 255 US 298, 41 S Ct 261, 65 L ed 647 (1921), and *United States v. Lefkowitz,* 285 US 452, 52 S Ct 420, 76 L ed 877, 82 ALR 775 (1932), are the principal supports for defendant's contention. See 43 Or L Rev 333 (1964). We also need not pass upon the issue.

*Gouled v. United States,* supra, and *United States v. Lefkowitz,* supra, reasoned that the Fourth Amendment (unreasonable search and seizure) and the Fifth Amendment (self-incrimination) are complementary. The Court appeared to hold that even though the method of search was correct, by search warrant or a search incident to arrest, property in which the owner had a right of privacy, such as his personal papers, etc., could not be seized unless they were the fruit of the crime or a means of committing a crime.[1]

In the present case the defendant had no Fifth-Amendment privilege for any of the items seized.

---

[1] As far as we have been able to determine, the principle of Gouled v. United States, supra, has never been applied, as a constitutional restriction, to state proceedings. It is now expressly made a restriction upon federal proceedings by Rule 41b of the Federal Rules of Criminal Procedure.

The items were the property of the girl or the owners of the farmhouse. An exception may have been the beer bottles. However, the defendant told Warman to throw the beer bottles "out in the back," so defendant no longer could assert such a privilege in this regard.

The items were admissible.

### III

The defendant assigns as error the state's "withholding" and "failing to advise the defendant" that the prosecutrix advised the state that she was going to leave the state before the trial. He asserts that this deprived him of his liberty without due process of law, particularly because he charges the girl testified at the trial that she was not going to leave the state.

■ The state cannot suppress testimony favorable to the accused or procure or condone perjured testimony. *Alcorta v. Texas*, 355 US 28, 78 S Ct 103, 2 L ed2d 9 (1957). It did not do so in this case.

■ The trial commenced on October twentieth. A motion was filed by the state on September twenty-eighth asking that the girl be held as a material witness and stating that she had indicated to a deputy sheriff that she was leaving the state. This was filed on such date in the regular file on the case which is kept in the county clerk's office and is a public record. On the same date there was placed in the same file a court order arresting the girl.

At the time the defendant was cross-examining the girl upon the subject of whether she was going to leave before the trial, defendant's counsel stated that she was held under arrest as a material witness by a court order. ORS 139.150-139.170 provides that an order to require a material witness to furnish an undertaking that she will appear or else be held is secured on motion

of the district attorney. The facts were all a matter of public record. There was no suppression or holding out of evidence on the part of the state.

## IV

The defendant charges that the statute making assault with intent to rape a crime and fixing the punishment (ORS 163.270) is invalid as contrary to the equal protection clause of the Federal and State Constitutions.

 The assault-with-intent-to-rape statute fixes the same maximum penalty as that fixed for consummated rape, i.e., 20 years. The defendant was sentenced to 10 years. Assault with intent to commit rape is an included offense in the crime of rape. *Cannon v. Gladden,* 203 Or 629, 281 P2d 233 (1955). That only attempted rape was committed rather than rape is merely a fortuity and a person committing the attempt may be as much of a menace to the community as one who was able to consummate the act. The legislature acted reasonably in setting the same maximum penalty for the attempted act as for the consummated act. *Cannon v. Gladden,* supra, at 633. See *Merrill v. Gladden,* 216 Or 460, 337 P2d 774 (1959).

## V

 The trial court instructed to the effect that if the defendant threatened the girl and the girl was so terrified by these threats that she did not resist defendant's having intercourse with her, the defendant would nevertherless be guilty of rape. The defendant claims this instruction is error in that there was no evidence of threats and the charge was abstract in that there was no evidence that the girl did not resist.

There was evidence of threats made by all the men, including the defendant, who supposedly said that he

would bury the girl with a tractor. There was no direct testimony of submission by the girl. However, the jury reasonably could have believed the girl to the extent that she testified that the defendant had intercourse with her, but disbelieved her testimony that she resisted to the limit of her capabilities. If they so found, a question would arise on the effect of consent obtained by threats. The defendant must have been of the same mind at trial as he requested an instruction that if the jury found the defendant had relations with the girl, but the state failed to prove lack of consent beyond a reasonable doubt, the verdict must be not guilty. The court did give that instruction and the giving of the instruction concerning consent brought about by threats was not error.

## VI

Before trial the defendant moved the court for an order requiring the girl to "submit herself to a complete medical examination by a medical doctor." The motion states such an order is necessary for an adequate defense. No more specific reason appears in the record. In his brief the defendant asserts that he wanted the examination for trial preparation on the question of the girl's mental competence to testify and for physical findings relevant to the charge of rape.

It is not apparent from defendant's motion that he desired the examination for the purpose of obtaining evidence upon the question of mental competence. It also appears from the examination and cross-examination of the girl that it is extremely unlikely that the trial court in its discretion would have found her incompetent to testify as "competency" is used in ORS 44.030, as interpreted in *State v. Canton,* 76 Or 51, 147 P 927 (1915), and *State v. Pace,* 187 Or 498, 212 P2d 755 (1949).

■ In regard to the physical aspect of the requested examination, there can be circumstances in which a medical examination should be ordered. For example, see *People v. Porcaro,* 6 NY2d 248, 189 NYS2d 194, 160 NE2d 488 (1959). However, such a procedure should only be required if it is specifically pointed out what purpose is to be served by the examination. Here, it was not.

For the above reasons the order denying the examination was not error.

## VII

■ The defendant's motion for a judgment of acquittal on the ground, among others, that the indictment was defective in that it charged more than one crime, was denied. That ruling is assigned as error.

The indictment charged that Cook, O'Rourke, and another raped the girl. In the O'Rourke case, O'Rourke moved that the state be required to elect whether O'Rourke was to be tried for the act of personally raping the girl or as an aider and abettor of one of the others. The state elected to try him on the theory that he personally raped the girl. In the present case the defendant made the same motion and the state elected to try Cook on the theory that he personally raped the girl.

ORS 132.560 provides: "The indictment must charge but one crime, and in one form only, except that: * * *." The defendant's position is that as the state elected to try O'Rourke for a rape he personally committed and Cook for a rape he personally committed, the indictment, as so interpreted, charges two separate crimes.

We have held that one can be indicted as a principal and convicted by proof that he acted as an aider and

abettor. *State v. Glenn*, 233 Or 566, 379 P2d 550 (1963). We have held that it was not error for the trial court to refuse to require the state to elect whether the defendant was to be tried as a principal or aider and abettor. *State v. Weitzel*, 157 Or 334, 341, 69 P2d 958 (1937). We hold here that it was error for the trial court to require the state to elect whether Cook was to be tried as a principal or as an aider and abettor, particularly when an election was required in the case of both O'Rourke and Cook, before either trial had started.

The order requiring the election being in error, the election will be disregarded. In that an election was made, we would not disregard it, although it was error to require it, if it had prejudiced the defendant. It did not. The statutes limiting the joinder of charges and persons in one indictment are for the purpose of preventing prejudice at trial caused by confusion resulting from the commingling of charges and persons. For example, see 23 Or L Rev, 56, 58-59 (1943). Here, Cook and O'Rourke were tried separately. Also, under the election, Cook was tried solely as a principal and could not be found guilty because he aided and abetted somebody else's act.

It was not error to deny the motion for judgment of acquittal.

Affirmed.