**Carl J. PETERSEN, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 96SC218.**

Supreme Court of Colorado, En Banc.

June 23, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Catherine P. Adkisson, Assistant Attorney General, Criminal Enforcement Section, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari in the case of *People v. Carl J. Petersen,* No. 93CA0570 (Colo.App. Jan. 25, 1996) (not selected for official publication), to review the court of appeals' determination that a caretaker of a property had either actual or apparent authority to consent to a search of that property by law enforcement officers.[1] We reverse.

I.

In August 1991, the El Paso County Sheriff's Department received a tip from a confidential informant that someone named Brian was growing large quantities of marijuana in a barn on rural property in Calhan, Colorado. Deputy Sheriff Scott Rosenbaum and Calhan Town Marshall Terry Bronson went to the property to investigate.

The property was a farm owned by defendant, Carl Petersen. The property had a main residence and a number of outbuildings. At the time, Petersen was away for a few days and had asked 19–year–old Michael Weller to feed the dogs and water the houseplants during his absence. Weller was a friend of the son of Petersen's girlfriend who visited Petersen's house from time to time. Weller had some talent as a handyman and Petersen would occasionally ask him to do chores around the property in exchange for meals or other compensation. Weller did not live at the Petersen property, but lived in an apartment in Colorado Springs.

David F. Vela, State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, for Petitioner.

1. We granted certiorari on the following issue: Whether the court of appeals erred and violated defendant's right against unreasonable searches and seizures by (1) expanding the "common authority" doctrine, and (2) applying "apparent authority" in a context where there is no assertion of mistaken fact.

Officers Rosenbaum and Bronson arrived at the Petersen property in the afternoon and drove up to the locked gate. Weller was in front of the main residence watering the grass. Weller eventually noticed the uniformed officers at the gate and walked up to greet them. Rosenbaum asked Weller who he was, and Weller replied that he was a friend of the Petersen family and was "caretaking" the property in Mr. Petersen's absence. Rosenbaum asked whether Weller knew anything about Brian or marijuana. Weller admitted that he knew Brian and knew that Brian and Mr. Petersen were away for a few days, but denied knowing anything about marijuana.

After quizzing Weller at the gate for a few minutes, the officers asked if they could come into the house to escape the hot sun and talk more about Brian and the marijuana. Weller agreed. Weller did not unlock the gate. Instead, the officers slipped through a one to two foot gap between the gate and the adjoining fence and followed Weller onto the property and into the main residence.

Once inside, the officers noticed a marijuana pipe and a small amount of marijuana in plain view on the kitchen table. Rosenbaum informed Weller that possession of marijuana was a petty offense, and that Weller would be served a summons and complaint for possessing marijuana. Rosenbaum then informed Weller of his *Miranda* rights. Rosenbaum continued questioning Weller about the marijuana on the table and other possible marijuana on the property. He asked if Weller had keys to any of the buildings on the property, and Weller responded that the keys were hanging on a hook on the refrigerator. Weller also indicated that he had stayed at the property from time to time, but did not say that he was currently staying at the Petersen farm or that he had ever lived there regularly.

The officers then asked Weller if they could look around the property, and Weller said, "Yeah, sure." At no time did the officers ask Weller if he had the authority to permit them to search. Weller followed the

officers as they left the main residence, walked past the dog kennels and approached a padlocked outbuilding. At this point Weller became nervous and refused to go any further. However, the officers could see what they believed to be marijuana plants through an opaque plastic window of the outbuilding. They then obtained a search warrant which led to the discovery of large quantities of marijuana. Petersen was charged with cultivating and possessing this marijuana with intent to distribute.

Petersen moved to suppress the fruit of the search of his property as a violation of his Fourth Amendment right to be free of unreasonable searches and seizures. He argued that Weller lacked authority to consent to the officers' search of his property. The trial court conducted a hearing at which Deputy Rosenbaum, Marshall Bronson, Carl Petersen and Michael Weller testified. The trial court credited the officers' version of events, and found that Weller voluntarily consented to the officers' entry and subsequent search of the property.[2] The trial court also specifically found that Weller had identified himself as the caretaker of the property; that Weller's duties were to water Petersen's plants, feed his dogs and take out the trash; that Weller had known the Petersen family for years and knew that Carl Petersen was away; and that Weller clearly had access to Petersen's house. From these facts the trial court concluded that

> Michael Weller possessed a sufficient relationship to Carl Petersen and his property to permit him to authorize the officers to enter and look around.... And, under these circumstances, Michael Weller clearly had apparent authority to allow the officers to enter the property. With his presence on the property and his self-defined duties as a caretaker, the Court concludes that the officers were under no duty of further inquiry from an objective perspective to question Michael Weller's ability to consent for Carl Petersen.... Michael Weller possessed the authority to consent to the entry of the officers to look

---

**2.** Weller testified that he did not consent to the officers' initial entry or give them permission to look around the property. Weller also testified

that he told the officers that he lacked authority to consent to a search.

around the property. (See, *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

The court of appeals reversed and remanded for a new trial because of a *Curtis* violation. *People v. Petersen*, No. 93CA0570, slip op. at 1–4; *see People v. Curtis*, 681 P.2d 504 (Colo.1984). However, the court of appeals also addressed the validity of the search and affirmed the trial court's ruling that Weller's consent was valid. *People v. Petersen*, No. 93CA0570, slip op. at 5–8. It held that Weller's authority to consent to the search of Petersen's property was based on his "mutual use of the property, joint access and control for most purposes, or other sufficient relationship to the property." *Id.* at 7 (citing *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and *People v. Breidenbach*, 875 P.2d 879 (Colo.1994)). The court of appeals did not discuss in any detail whether Weller had actual authority to consent to the search or whether he lacked actual authority but reasonably appeared to the officers as possessing such authority. Rather, the court of appeals simply concluded that "the trial court did not err in finding that the young man had actual or at least apparent authority to consent to the search." Slip op. at 8.

## II.

■ Under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). An exception to the warrant requirement exists where police have obtained voluntary consent to the search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Thiret*, 685 P.2d 193 (Colo.1984). Here, the People concede that the officers had no warrant and rely entirely on consent to justify the officers' entry and search of the property.

■ The owner of the property, Carl Petersen, was not present to grant or refuse the officers' request to enter and search the property. The People argued that the officers properly relied upon the consent of Michael Weller, whose power to consent to the search stemmed from his "common authority" over the property. Because the People bear the burden of proving that a particular search falls within an exception to the warrant requirement, *see People v. Turner*, 660 P.2d 1284, 1287 (Colo.1983), the People bear the burden of establishing common authority when they rely on this theory of third-party consent. *See People v. McKinstrey*, 852 P.2d 467, 471 (Colo.1993).

We have found no cases where non-resident caretakers were held to possess common authority over property. It is only where caretakers were also full-time residents of the property that courts have found sufficient mutual use, access and control to sustain a finding of common authority. *See United States v. Dearing*, 9 F.3d 1428, 1430 (9th Cir.1993) (resident caretaker and housekeeper had authority over common areas of house, but not defendant's bedroom); *State v. Cook*, 242 Or. 509, 411 P.2d 78, 81–82 (1966) (live-in caretaker with key and unqualified access to property had authority to consent to search); *Shue v. State*, 129 Ga.App. 757, 201 S.E.2d 174, 175 (1973) (resident caretaker had authority to consent to search). The latter two cases were decided before the common authority doctrine was first articulated by the United States Supreme Court in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

In *Matlock*, police sought permission to search defendant's house. Instead of asking defendant, who was available, the police asked permission from a woman who lived in the house with the defendant as his girlfriend or common-law wife. The Supreme Court held that this co-occupant possessed common authority over the premises, and could consent to a search in her own right regardless of the defendant's contrary wishes. *Matlock*, 415 U.S. at 170–71, 94 S.Ct. at 992–93.

The Supreme Court explained the contours of this doctrine in a footnote:

> Common authority is, of course, not to be implied from the mere property interest that a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and

legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (citations omitted).

We recently explored this definition of common authority in *People v. McKinstrey,* 852 P.2d 467 (Colo.1993) and *People v. Breidenbach,* 875 P.2d 879 (Colo.1994). In *McKinstrey,* police sought permission to search an unlocked cabin from a neighbor who was a caretaker of the cabin, had a key to the cabin, and claimed to be a partial owner of the cabin. 852 P.2d at 469. We held that under these circumstances, the caretaker "lacked joint access and control for most purposes" and thus lacked common authority to consent to the search. *Id.* at 471; *see also People v. Walter,* 890 P.2d 240, 242–43 (Colo. App.1994) (fifteen-year-old babysitter hired by owner-defendants from time to time lacked common authority to consent to police search).

By contrast, in *People v. Breidenbach,* defendant lived in a residence on a farm compound owned by his father. Defendant's brother also lived in another residence on the compound. 875 P.2d at 883. The father and brother had unrestricted access over all areas of the compound, could invite others onto the compound, and frequently exercised these rights. We held that the father and brother had common authority to consent to search the farm compound, excluding defendant's actual residence. *Id.* at 887–89.

■ Because a co-inhabitant can permit a search of the property in his or her own right, we have also held that a common-authority consent may justify a search despite the presence of an owner-occupant who objects to the search. *People v. Sanders,* 904 P.2d 1311, 1314 (Colo.1995) (absent occupant's consent to search trailer held sufficient under *Matlock;* the fact that defendant-occupant was present and did not consent to the search deemed irrelevant). Hence, a finding that Michael Weller possessed common authority over the property must be predicated on a determination that Weller's access, use and control over the farm was comparable to or co-extensive with Petersen's, and that Weller could consent to the search even if Petersen had been present and had objected. We do not agree that Weller's status as part-time caretaker with limited duties could give him such broad authority over Petersen's property.

■ In reviewing a trial court's denial of a motion to suppress, we defer to that court's factual findings and only reverse where its conclusions are unsupported by its evidentiary findings or where it applies an erroneous legal standard. *People v. Weston,* 869 P.2d 1293 (Colo.1994). Here, the trial court specifically found that Michael Weller's access and use of the farm was limited to his duties of feeding the dogs, watering the houseplants and removing trash while Petersen was away. Weller had no ownership interest in Petersen's farm. He had never lived there, and was not residing there at the time of the search. While Weller had stayed at the property off and on, he had done so only with Petersen's permission and never while Petersen was away. Weller did not use the property for his own benefit. The record does not reveal whether Weller even possessed his own keys to the residence, or whether he relied on others to let him in to perform his few chores while Petersen was away.[3] These facts cannot support the legal conclusion that Weller's access to, use and control of the

3. Although Weller knew that the keys to the property were hanging on the refrigerator, the record contains no evidence or testimony that Weller had his own keys to the property. Weller denied having his own keys, and Petersen denied having given him keys. Weller testified that he arrived at the property that morning through a back driveway, rather than through the locked front gate. It is not clear whether Weller had his own key to the main residence or whether someone else let him into the residence that day. For instance, the record reveals that Carl Petersen's brother Earl resided in another house on the property, and could have let Weller in to do his chores. Whether Weller had his own keys is relevant to the determination of his access, use and control of the property, although it is not dispositive of these issues.

property was co-extensive to Petersen's. *See Matlock*, 415 U.S. at 171, n. 7, 94 S.Ct. at 993 n. 7. Given the contours of common authority outlined in *McKinstrey* and *Breidenbach*, we are compelled to conclude that Weller lacked common authority over Petersen's farm.

The People argue that in giving Weller even limited access to his property, Petersen "assumed the risk" that Weller might permit police to search it. In the context of *Matlock*'s common authority analysis, the Court did not hold that when an owner of property gives a third party access, he necessarily assumes the risk that this third party might invite police on to the property or consent to a search. The *Matlock* Court stated that when a person chooses to live with other co-inhabitants who have joint access and control over the property, then "it is reasonable to recognize that any of the *co-inhabitants* has the right to permit the inspection in his own right and that the others have assumed the risk that *one of their number* might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (emphasis added). Weller was not a co-inhabitant of Petersen's property and did not have joint access or control for most purposes. Weller was a temporary, part-time caretaker who resided elsewhere. Petersen cannot be said to have entered into a living arrangement with Weller which involved assuming a risk that Weller might exercise his independent control over the property to invite police to search it.

The court of appeals relied on *United States v. Baswell*, 792 F.2d 755 (8th Cir.1986) to support its conclusion that Weller had common authority over the property. *Petersen*, No. 93CA0570, slip op. at 7–8. *Baswell* is not a common authority case, but rather engages in an agency analysis. In *Baswell*, the property owner employed a part-time caretaker both to clean the property and to "look out for the property." 792 F.2d at 759. The caretaker saw a guest of the owner's hiding drugs in the attic, and invited police to come and search. *Id.* at 757. The Eighth Circuit Court of Appeals held that because the caretaker's access and use of the property was limited, he *lacked* common authority to consent to a search. *Id.* at 759. However,

the court concluded that the caretaker had implied authority as the owner's agent to consent to the search. *Id.* This conclusion was based on the trial court's findings that the caretaker had a right to enter the house to investigate suspicious circumstances and implied authority to authorize the entry of investigating officers if he thought someone was doing something unlawful without the owner's knowledge. *Id.* The caretaker in *Baswell* was reporting criminal behavior of another and protecting the interests of the absent homeowner, pursuant to his authority to protect and secure the property.

Here, the People did not argue at trial or on appeal that Weller had authority to consent to the search because he was Petersen's employee or agent, and the trial court made no findings concerning Weller's agency status. The People's argument concerning agency analysis is that an agency approach reveals the appearance that Weller had common authority because Peterson assumed the risk that Weller might grant access to the property to others. This argument confuses distinct doctrines of authority based on common use or control, authority conferred to an agent by express or implied delegation, and the reasonable appearance of authority where there is actually no authority. Also, the evidence does not support a broad request by Peterson that Weller was to protect and secure the property. In *Baswell* the caretaker was expected to investigate suspicious circumstances. *Baswell*, 792 F.2d at 759.

Here, agency doctrine does not support the authority by someone whose specified duties are to feed dogs and water houseplants to consent to a search of the property. This distinction between *Baswell* and the present case is significant because a homeowner does not generally confer broad authority to a housekeeper, handyman, or one given light caretaking duties.

The trial court found that Weller's access to Petersen's residence was limited to watering Petersen's plants, feeding his dogs and taking out the trash. Weller's duties did not involve the outbuilding which contained the marijuana. The record does not reveal that Weller had any authority or reason to access

the outbuilding or that Weller even had actual access to this outbuilding,[4] or the surrounding area. Under these circumstances, Petersen did not lower his expectation of privacy in the outbuilding by employing Weller as a caretaker with limited duties, and we reject the People's argument that he therefore assumed the risk that Weller might consent to its search.

Other jurisdictions have uniformly held that caretakers similar to Weller lacked common authority over the property to consent to a search. *See Baswell*, 792 F.2d at 759; *People v. Keith M.*, 255 Ill.App.3d 1071, 192 Ill.Dec. 825, 835, 625 N.E.2d 980, 990 (1993) (daytime babysitter and housekeeper lacked common authority where she had key to defendant's house but did not reside there, did not use house for her own personal satisfaction but performed duties at the pleasure of the owner); *State v. Sorenson*, 180 Mont. 269, 590 P.2d 136, 141 (1979) (caretaker lacked common authority where her access to the house was limited to enter and perform requested tasks of caring for houseplants and animals in owner's absence); *Riordan v. State*, 905 S.W.2d 765, 771 (Tex.App.1995) (defendant's neighbor who was at defendant's house to watch defendant's twelve-year-old son lacked common authority).

We therefore hold that the court of appeals erred in concluding that Weller had common authority over Petersen's farm and could consent to its search.

## III.

The trial court and the court of appeals discussed the doctrine of apparent authority, concluding that if Weller lacked actual authority to consent to the search, the officers may have reasonably believed that he possessed such authority. However, the trial court made no specific findings to support the application of apparent authority in lieu of actual authority, and neither court distinguished between the doctrines of actual authority and apparent authority. This distinction is critical because, for all practical purposes, the two doctrines are mutually exclusive.

In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court held that an unauthorized search may still satisfy the Fourth Amendment's reasonableness requirement where police mistakenly but reasonably believe that the third party consenting to the search possesses common authority over the property. In *Rodriguez*, police searched an apartment upon the consent of a woman who had recently moved out of the apartment, which was still occupied by her abusive boyfriend. *Id.* at 179–80, 110 S.Ct. at 2796–97. The woman referred to the apartment as "our apartment," stated that she had clothes and furniture there, and let the officers into the apartment with her own key. *Id.* The Supreme Court held that the woman lacked actual authority to consent to the entry and search because she no longer lived at the apartment, but because the officers reasonably believed that she was a co-inhabitant and thus possessed common authority over the apartment, their search was not unreasonable and did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* at 181–82, 110 S.Ct. at 2797–98; *see also McKinstrey*, 852 P.2d at 471–73; *People v. Hopkins*, 870 P.2d 478, 480 (Colo.1994).

■ Apparent authority is not a lesser version of common authority. An apparent authority analysis begins by conceding that the consent obtained by police is legally invalid because the consenting third party lacks sufficient authority over the property to consent to a search. Apparent authority is not authority at all, but merely the appearance of authority. A search justified by the apparent authority doctrine is not authorized by consent from one with authority to give it. Rather, such a search, without valid consent, does not violate the Fourth Amendment because it is not unreasonable. *See Rodriguez*, 497 U.S. at 183, 110 S.Ct. at 2798–99. The doctrine relies on the fact that the determination of a third party's authority to consent

---

4. The building was padlocked. Although Weller knew that keys to the property hung on a hook on the refrigerator, the record does not reveal whether these keys included a key to the padlock on this particular outbuilding.

is a factual determination, and that mistakes of fact can be reasonable under certain circumstances. "[T]o satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable." *Rodriguez,* 497 U.S. at 185–86, 110 S.Ct. at 2800.

*Rodriguez* emphasized that police may not proceed in deliberate ignorance of the facts, but may be obliged to conduct further factual inquiry before relying on a grant of third-party consent.

> [W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry.

*Rodriguez,* 497 U.S. at 188, 110 S.Ct. at 2801.

■ *Rodriguez* also makes clear that the apparent authority doctrine is based on good faith and reasonable mistakes of fact, not law. The apparent authority doctrine applies where the police reasonably believe facts to be true, which, if true, would amount to common authority. Police must execute and enforce the law in a manner which does not violate the Constitution. While an officer might make a reasonable mistake of fact in assessing a person's apparent authority over property, an officer's misunderstanding of the law may not be similarly excused. Otherwise, the protections of the Fourth Amendment would be effectively limited to what the average police officer believed was reasonable.

In *Rodriguez,* the Court discussed this basic distinction between mistakes of fact and mistakes of law in reviewing its prior holding in *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In *Stoner,* the Court held that police could not rely on a hotel clerk's consent to search defendant's hotel room even though the police may have honestly but mistakenly believed that the clerk had legal authority to consent. *Rodri-*

*guez,* 497 U.S. at 187, 110 S.Ct. at 2800–01. *Rodriguez* essentially states that police officers' belief that a hotel clerk could consent to the search of a guest's room would be unreasonable because the belief was an error of law. *Id.*

Subsequent cases have emphasized that the apparent authority rule applies to mistakes of fact, but cannot apply to mistakes of law without eviscerating the Fourth Amendment. *See United States v. Elliott,* 50 F.3d 180, 186 (2d Cir.1995) (officer's erroneous belief that landlords are generally authorized to consent to a search of a tenant's premises), *cert. denied,* —— U.S. ——, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996); *United States v. Brown,* 961 F.2d 1039, 1041 (2d Cir.1992) (officer incorrectly concluded that individual authorized to enter apartment to turn off appliances and lights could consent to search); *United States v. Salinas–Cano,* 959 F.2d 861, 865–66 (10th Cir.1992) (officer's mistaken belief that apartment tenant could conduct search of another's suitcase in the apartment); *United States v. Whitfield,* 939 F.2d 1071, 1073–74 (D.C.Cir.1991) (*Rodriguez* applies to situations in which an officer would have had valid consent to search if the facts were as he reasonably believed them to be); *see also* 3 Wayne R. LaFave, *Search and Seizure,* § 8.3(g) at 746 (3d ed.1996). As a result, the apparent authority doctrine may only be properly invoked where police officers reasonably relied on some specific mistaken fact in assessing the third-party's authority to consent to a search of a particular area. *See United States v. Dearing,* 9 F.3d 1428, 1429–30 (9th Cir.1993).

■ Here, both the trial court and the court of appeals held that Weller had at least apparent authority to consent to a search of Petersen's farm. However, neither court identified any fact that the officers reasonably but mistakenly believed which would have caused Weller's authority to appear greater than it actually was. For instance, Weller did not misrepresent that he lived on the farm and was responsible for the outbuildings. Had he done so, the officers might have reasonably believed this to be true. Absent such a mistake of fact, the

apparent authority doctrine is simply not applicable.

It appears that the trial court instead applied the apparent authority doctrine to the officers' *legal* conclusion that Weller could consent to the search of the property:

> [U]nder these circumstances, Michael Weller clearly had apparent authority to allow the officers to enter the property. With his presence on the property and his self-defined duties as a caretaker, the Court concludes that the officers were under no duty of further inquiry from an objective perspective to question Michael Weller's ability to consent for Carl Petersen.... (See, *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

The apparent authority doctrine cannot excuse the officers' mistaken legal belief that a caretaker with limited duties had common authority to consent a search of the property. Rather, this is precisely the situation described in *Rodriguez* which calls for further factual inquiry by police before accepting a third-party's consent to enter and search a property. We conclude that the apparent authority doctrine has been misapplied in this case.

## IV.

Because Michael Weller's use and control of the Petersen farm was significantly limited, Weller lacked common authority over the farm which would permit the officers to accept his consent to search it. Also, the officers' mistaken legal belief that a caretaker such as Weller has sufficient authority to permit a search cannot justify the search under the apparent authority doctrine. The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents.

Chief Justice VOLLACK dissenting:

The majority reverses the court of appeals and holds that a temporary caretaker assuming various duties while a property owner is away lacks common and apparent authority to consent to a search of the owner's property. Consequently, the majority holds that the police officers' warrantless search of the owner's property violated the Fourth Amendment prohibition against unreasonable searches and seizures. In my view, the caretaker in this case had a sufficient relationship with the property to establish the caretaker's authority to consent to a search. I therefore disagree with the majority's conclusion that the caretaker in this case lacked authority to consent to the officers' entry and subsequent search of the property and would affirm the court of appeals. Accordingly, I dissent.

## I.

Acting on a tip from a confidential informant, El Paso County Deputy Sheriff Scott Rosenbaum (Deputy Rosenbaum) and Calhan Town Marshall Terry Bronson proceeded to investigate possible marijuana cultivation at a farm owned by the defendant Carl Petersen (Petersen). Upon their arrival at the farm, the two officers encountered nineteen-year-old Michael Weller (Weller) at a locked gate on the edge of the Petersen property. Weller was a friend of the Petersens and had known Carl Petersen for seven years, during which time he occasionally spent the night and ate meals at the Petersen property in exchange for doing chores. Weller informed the officers that Petersen was out of town and that he was feeding the dogs, watering the plants and lawns, and taking out the trash while Petersen was away.

Deputy Rosenbaum asked Weller if he could come inside the gate to speak with him. Weller agreed. The officers and Weller proceeded across the courtyard and into Petersen's residence. After the officers questioned Weller about the presence of marijuana on the farm, Weller agreed to let the officers "look around." This inspection led the officers to a locked outbuilding which had a window covered with an opaque plastic material. Looking through this window, Officer Rosenbaum observed what he believed to be marijuana plants. Based upon this information, the officers proceeded to obtain a search warrant which resulted in the seizure of approximately 150 marijuana plants.

Prior to his trial, Petersen moved to suppress the evidence obtained during the search of his property. The trial court denied the motion, finding that Weller voluntarily gave his consent to search the premises and that Weller "possessed the authority to consent to the entry of the officers to look around the property." In an unpublished opinion, the court of appeals affirmed the trial court's ruling on the motion to suppress.

## II.

The Fourth Amendment of the United States Constitution prohibits the warrantless search of a person's home or property because such a search is presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586–90, 100 S.Ct. 1371, 1380–82, 63 L.Ed.2d 639 (1980); *People v. Breidenbach*, 875 P.2d 879, 888 (Colo.1994); *People v. McKinstrey*, 852 P.2d 467, 470 (Colo.1993). However, the prohibition against warrantless searches does not apply to situations where police officers obtain voluntary consent to search the property, either from the individual whose property is searched, or from a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *See United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *People v. Savage*, 630 P.2d 1070, 1073 (1981). The relevant inquiry in evaluating third-party cases is whether the facts would have justified a reasonable officer's belief that the consenting party had authority over the premises. *See Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).

In the current case, Weller is not a full-time resident on the Petersen property and would not have the authority to consent to a search if Petersen were present. I therefore agree with the majority that Weller does not possess common authority over the Petersen farm. *See Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (explaining that the common authority determination involves "mutual use of the property by persons generally having joint access or control for most purposes"). However, the common authority analysis should not apply to situations where a third party possesses a heightened level of control over the property in the owner's absence. In these situations, the proper standard to apply is whether the person entrusted to look after the absent owner's property has a "sufficient relationship to the premises or effects sought to be inspected" which would authorize that person to consent to a search of the property. *Matlock*, 415 U.S. at 171, 94 S.Ct. at 993. It is this analysis that forms the basis of the trial court's ruling.[1] I agree with the trial court that Weller's duties as caretaker of the Petersen property establish that he possessed a sufficient relationship with the premises to authorize a search of the property.

*State v. Sorenson*, 180 Mont. 269, 590 P.2d 136 (1979), involves facts very similar to the present case. In *Sorenson*, the defendant was a homeowner who asked a neighborhood youth to care for his houseplants and animals while he and his wife were on vacation. The youth's mother assured the defendant that either she or the youth would perform the necessary tasks. The youth subsequently exhibited violent tendencies after an incident at school which led police to search for his whereabouts. Upon receiving the mother's permission to enter the defendant's home to look for the youth, the police found marijuana and drug paraphernalia. The Montana Supreme Court reversed the defendant's conviction, holding *inter alia* that under the *Matlock* standard, the youth's mother did not have a sufficient relationship with the residence to authorize her consent to a search. *Id.* at 141. However, the court also noted that providing the youth with keys gave the youth constructive possession over the premises, thereby implying that the youth had a sufficient relationship with the residence to authorize him to consent to a search. *Id.* Cases from other jurisdictions similarly hold that a caretaker's consent is sufficient to authorize a warrantless search of the proper-

---

**1.** While the trial court specifically mentions apparent authority and cites *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), as support for its ruling, it is my view that the primary focus of the trial court's inquiry concerned whether Weller had a sufficient relationship with the property to authorize his consent to a search of the property.

ty. *See State v. Perry*, 502 So.2d 543, 557 (La.1986); *State v. Cook*, 242 Or. 509, 411 P.2d 78, 81–82 (1966); *Shue v. State*, 129 Ga.App. 757, 201 S.E.2d 174, 175 (1973).

In this case, Petersen and Weller were closely acquainted due to the fact that Weller had spent considerable time at the Petersen farm and had slept and eaten there on prior occasions. Consequently, Petersen chose Weller to care for his property while he was out of town. Weller's specified duties included taking out the trash, watering the plants and yard, and feeding the animals. As with most caretaking arrangements, Weller was also presumably entrusted with looking after the general condition of the property. Although Petersen did not provide Weller with his own set of keys, Weller had free access to the house and grounds and indicated that he could locate keys that would open locked areas. Weller's closeness with the Petersen family, his familiarity with the property, and the nearly unlimited access he was afforded to fulfill his responsibilities establish that he possessed a sufficient relationship to the premises to consent to a search of the property. As the trial court explained in ruling on Petersen's motion to suppress:

> Weller identified himself as the caretaker of the property. He knew that Carl Petersen was gone to California and when he would return. He was assigned duties to look after the property and to care for Carl Petersen's animals and plants. One look at the Defendant's photographic exhibits showing inside the house indicates the importance of those plants to Carl Petersen. Further, Michael Weller's presence inside the house was established by his marijuana in the kitchen. Clearly, the house would have the highest degree of privacy to it of all the buildings on the property, and the fact that Michael Weller had the authority to enter and remain in the house further supports his authority over the property. Michael Weller also had a longstanding relationship with Carl Petersen and his family. In Carl Petersen's own words, he ate there and slept

there in the past in exchange for doing chores. *Clearly, Michael Weller possessed a sufficient relationship to Carl Petersen and his property to permit him to authorize the officers to enter and to look around.*

(Emphasis added.) [2]

Furthermore, the scope of the warrantless search conducted in this case indicates that the search was reasonable under the circumstances. After obtaining Weller's consent to enter the Petersen property, the officers limited their search to those areas under Weller's authority and control. After a cursory look inside the residence, the officers proceeded to "look around" the grounds. Once the officers observed what they thought were marijuana plants through an opaque window to a locked outbuilding, they withdrew and proceeded to obtain a search warrant. By choosing not to enter the locked outbuilding, the officers recognized that Petersen had a specific privacy interest in the property that was beyond the scope of Weller's authority to consent. Therefore, the warrantless search was consistent with the scope of Weller's authority and reasonable under the circumstances.

### III.

In evaluating whether a temporary caretaker possesses authority to consent to a search of an absent owner's property, a court must evaluate whether the caretaker possesses a sufficient relationship to the premises or effects sought to be inspected. In my view, Weller's relationship with the Petersen family, his familiarity with the premises, and his nearly unlimited access establish that he possessed a sufficient relationship to the property to permit him to authorize the officers to enter and look around the Petersen farm. Furthermore, the search at issue was reasonable under the circumstances because it was limited in scope to areas over which Weller had dominion and control. For these reasons, I believe that evidence obtained during the search conducted pursuant to a valid

---

**2.** Because Weller had actual authority to consent to a search of the property, it is my view that a discussion of apparent authority under the United States Supreme Court's holding in *Illinois v.* *Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), is unnecessary. *See United States v. Dearing*, 9 F.3d 1428, 1429 (9th Cir. 1993).

search warrant was properly admitted into evidence. I would therefore affirm the decision of the court of appeals. Accordingly, I dissent.