JUSTICE GABRIEL,
dissenting.
¶ 31 The Fourth Amendment to the United States Constitution provides:
The right,of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,
¶ 32 In light of this plain language, it has long been settled that “the Fourth Amendment has drawn a firm line at the entrance to the house,” Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
¶ 33 Today, the majority substantially erases this firm line by upholding a police officer’s warrantless entry into respondent Susan Leigh Stock’s home despite the absence of any evidence that she had consented to the officer’s initial entry. To reach this conclusion, the majority surmises consent *394 based on a series of inferences and assumptions that supposedly show that Stock had given her father the authority to consent to the officer’s “limited entry” into the home. Maj. op. ¶ 27.
¶ 34 Because (1) I perceive no evidence in the record to support a conclusion that Stock authorized her father to let the officer into her home and (2) I believe that the majority’s conclusion is contrary to longstanding Fourth Amendment jurisprudence, I respectfully dissent.
I. Factual Background
¶ 35 In the course of its analysis, the majority relies on a significant number of inferences and assumptions. For example, the majority states:
• “[Ajfter the officer stepped into the room, the father asked whether he should stay, indicating ... that the officer’s arrival was expected.” Id. at ¶21.
• “Stock expressly agreed to talk with the officer and proceeded to clear a seat for him in the room. These actions are inconsistent with Stock’s present contention that she did not consent to the officer’s entry; to the contrary, they further confirm that she had, in fact, given her father authority to permit the officer to enter the hotel room to speak with her.” Id.
• “[Although the officer knew the father was not staying in that room, the prevailing social expectation is that visitors can rely on invitations to enter given by adult guests of a dwelling because one generally does not answer a door if one has not been authorized by the resident to either admit or turn away visitors.” Id. at ¶23.
• “[Bjecause Stock’s hotel room was a typical single-room unit, Stock presumably would have been aware of the officer’s knock, giving her the opportunity to turn away the police officer, had she so wished.” Id. at ¶24.
¶ 36 None of these inferences and assumptions, however, finds support in the record. Instead, the above-quoted statements appear to reflect the majority’s own findings as to what Stock and her father might have known, done, or presumed, given the majority’s assumed social expectations.
¶ 37 Respectfully, I do not see this as our proper role. To the contrary, as the majority correctly states, we must defer to the trial court’s findings of historical fact that are supported by competent evidence in the record, but we assess the legal effect of those historical facts de novo. Id. at ¶13 (citing People v. Simpson, 2017 CO 25, ¶ 12, 392 P.3d 1207, 1210).
¶38 In my view, the pertinent facts of record, which are largely undisputed, are as follows:
¶ 39 Stock lived and worked at a hotel in Winter Park, Colorado. After confessing to the hotel’s owner that she had stolen money from the hotel’s vending machines, the hotel manager called the police department to report the theft and to request that an officer respond. An officer did so and spoke with the hotel’s owner, who told the officer that Stock was in her room at the hotel. The owner gave the officer the room number, and the officer proceeded to that room. Notably, the officer testified that when he first responded to the hotel, he did not know that he was going to be interviewing Stock. Moreover, Stock testified to her understanding that the hotel owner did not wish to press charges against her. These facts undermine the majority’s inference that the officer’s arrival at Stock’s room was expected.
¶ 40 ■ The officer found Stock’s room and knocked on the door. No evidence indicated that the officer had announced, “Police,” or otherwise identified himself as he knocked.
¶41 Stock’s father, who the officer knew did not reside there, answered the door. No evidence indicated that Stock had asked him to do so, and at the time her father answered the door, Stock was in the center of the room crying. The father opened the door, at which point, according to the father, the officer asked to speak with Stock and asked the father to leave. The father stepped back, allowed the officer to enter, and then left, pursuant to the officer’s instructions. The record does not indicate that Stock paid any attention to what her father was doing at the *395 door. Nor does the record indicate that Stock had invited the officer into her home, consented to his entry, or authorized her father to let the officer in. To the contrary, Stock specifically testified that she did not invite the officer in and did not consent to his coming into her home, and her father likewise testified that Stock had never invited the officer in.
¶ 42 In my view, these are the facts that must drive our analysis, and I turn next to that analysis.
II. Analysis
¶ 43 I begin by noting the Fourth Amendment principles and related authorities that govern this case. I then apply those principles to the record facts before us and conclude that Stock did not consent to the officer’s entry into her home, thus establishing a Fourth Amendment violation.
A. Fourth Amendment Principles
¶ 44 As the majority observes, the Fourth Amendment and article II, section 7 of the Colorado Constitution prohibit unreasonable searches and seizures. Maj. op. ¶ 14. Construing this prohibition, we have said that a warrantless entry into a person’s home is per se unreasonable and in violation of the Fourth Amendment unless it falls within one of a few well-delineated exceptions. People v. Taube, 864 P.2d 123, 129 (Colo. 1993).
¶ 46 The voluntary consent of a person authorized to grant such consent is one recognized exception to the Fourth Amendment’s warrant requirement. United States v. Matlock, 415 U.S. 164, 170-71, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). As the Supreme Court has explained, such voluntary consent need not necessarily come from the defendant himself or herself:
[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.
Id. at 171, 94 S.Ct. 988; accord Petersen v. People, 939 P.2d 824, 827-28 (Colo. 1997).
¶46 The common authority that justifies third-party consent rests on the “mutual use of the property by persons generally having joint access or control for most purposes.” Matlock, 415 U.S. at 171 n.7, 94 S.Ct. 988; accord Petersen, 939 P.2d at 827-28.
¶47 In addition to consent given by the defendant or a person with common authority over the premises, both the United States Supreme Court and this court have recognized that the voluntary consent exception can be satisfied (and a search can be deemed reasonable) when a police officer reasonably but mistakenly believed that a third party who had consented to a warrantless entry had common authority over the property. See Illinois v. Rodriguez, 497 U.S. 177, 186-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); Petersen, 939 P.2d at 830-31.
¶ 48 As this court has observed:
Apparent authority is not a lesser version of common authority. An apparent authority analysis begins by conceding that the consent obtained by police is legally invalid because the consenting third party lacks sufficient authority over the property to consent to a search. Apparent authority is not authority at all, but merely the appearance of authority. A search justified by the apparent authority doctrine is not authorized by consent from one with authority to give it. Rather, such a search, without valid consent, does not violate the Fourth Amendment because it is not unreasonable. The doctrine relies on the fact that the determination of a third party’s authority to consent is a factual determination, and that mistakes of fact can be reasonable under certain circumstances.
Petersen, 939 P.2d at 830-31 (citing Rodriguez, 497 U.S. at 183, 110 S.Ct. 2793).
¶ 49 The People bear the burden of proving the existence of an exception to the Fourth Amendment’s warrant requirement. Id. at 827; accord People v. Santisteven, 693 P.2d 1008, 1012 (Colo. App. 1984); see also People v. Fuerst, 2013 CO 28, ¶ 11, 302 P.3d 253, 256 (noting that a warrantless search of a home by the police is presumptively unrea *396 sonable and that to overcome this presumption the prosecution has the burden of showing that the warrantless search was justified under one of the narrow exceptions to the warrant requirement). Mere acquiescence to a claim of lawful authority, however, is insufficient to establish consent to a warrantless entry. Santisteven, 693 P,2d at 1012.
¶ 60 With these principles in -mind, I turn to the facts of this case.
B. Application
¶ 61 Here, it .is undisputed that Stock did not personally invite the officer into her home. Indeed, she testified, without contradiction, that she had neither invited nor consented to the officer’s entry.
¶ 62 It is further undisputed that Stock’s father did not have common authority over Stock’s home. Specifically, no evidence showed — and no party contended — that Stock’s father had joint access to or control over Stock’s room at the hotel.
¶ 63 And it is undisputed that Stock’s father did not have the apparent authority to allow the officer to enter. The officer knew that the,father did not reside there, and the People do not contend that the officer harbored a reasonable but mistaken belief that Stock’s father had common authority over the room. See Rodriguez, 497 U.S. at 185-89, 110 S.Ct. 2793 (noting that apparent authority is based on a police officer’s reasonable but mistaken belief that a third party who consented to a warrantless entry had common authority over the property); Petersen, 939 P.2d at 830-31 (same).
¶54 The question thus becomes whether Stock authorized her father to consent to the officer’s entry into her home. Unlike the majority, I perceive no evidence to support a conclusion that she did. Specifically, nothing in the record shows that Stock directly authorized her father to consent to the officer’s warrantless entry into her home, and the majority cites no such evidence. Instead, the majority infers such authorization from the existing and assumed circumstances. But it does so without record support.
¶ 66 Nor do I believe that Stock’s conduct after the officer had entered her home establishes the requisite consent. In reaching its conclusion that Stock had authorized her father to allow the officer to enter the home, the majority principally relies on the facts that once the officer was in the home, Stock agreed to speak with him and even cleared a place for him to sit. Maj. op. ¶21. The Fourth Amendment violation, however, occurred when the officer crossed the “firm line, at the entrance to the house.” Payton, 446 U.S. at 590, 100 S.Ct. 1371. Moreover, the majority does not explain, nor do I perceive, how Stock’s post-violation conduct here bears on any authority that she may have given her father. Specifically, the fact that Stock agreed to speak to the officer after he had already entered her home says nothing about how or when Stock authorized her father to allow the officer to enter. This is especially true here, where (1) Stock testified that she did not invite the officer into her home and did not consent to his entry, (2) Stock’s father likewise testified that Stock had never invited the officer into the home, and (3) Stock testified that- she felt that she was required to speak to the officer at that point.
¶ 56 The cases on which the majority relies for the proposition that consent may be implied from the context and circumstances, see maj. op. ¶ 18, likewise do not support its inference of consent. Specifically, Birchfield v. North Dakota, — U.S. -, 136 S.Ct. 2160, 2185, 195 L.Ed.2d 560 (2016), and People v. Hyde. 2017 CO 24, ¶ 21, 393 P.3d 962, 967, both involved statutory implied consent to warrantless blood and breath tests in cases involving people suspected of driving under the influence. In cases such as these, by statute, a driver’s consent to a warrant-less blood or breath test can be inferred from the driver’s own conduct — namely, exercising the privilege to drive. Here, in contrast, we have no statute delineating what conduct would evince implied consent. Nor do we have evidence that Stock did anything to consent to the .officer’s warrantless entry into her home. Instead, we have (1) the majority’s inferences and assumptions, based on what it views to be prevailing socigl expectations, and (2) Stock’s post-violation agreement to *397 speak with the officer, which, on the facts presented here, I believe to be irrelevant,
¶ 57 Florida v. Jardines, 569 U.S. 1, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013), and Marshall v. Barlow’s, Inc., 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), which, as the majority notes, Birchfield cited, are even less helpful.
¶ 58 In Jardines, 133 S.Ct. at 1416-16, the Court contrasted a homeowner’s placing a knocker on his or her front door with a police officer’s having a trained police dog explore the area around the home in hopes of discovering incriminating evidence. The Court observed that the knocker would evince the owner’s invitation to knock to attempt to gain entry. See id. In contrast, the owner could not be deemed to have implicitly consented to the search involving the dog. See id. at 1416.
¶ 59 In Marshall. 436 U.S. at 313, 98 S.Ct. 1816, the Court noted the exceptional case of certain industries in which the history of close governmental regulation is so pervasive that a proprietor could not assert a reasonable expectation of privacy in the operation of the enterprise.
¶ 60 Neither of these cases supports the majority’s inference of consent in the present case. To the contrary, they generally affirm the right of people to be free from warrant-less intrusions into their homes absent either express consent or narrowly circumscribed implied consent.
¶ 61 Finally, . I do not believe that the broad “inferred consent” exception that the majority appears to adopt is sufficiently articulated such that our trial judges will be able to apply it with consistency. Although I appreciate the majority’s efforts to limit its holding to the facts of this case, it is unclear to me how the exception that the majority appears to adopt will be applied in future cases. Is the size of the home determinative? (The majority emphasizes that Stock’s home was “a typical single-room unit.” Maj. op. ¶ 6.) Does it matter how far into the home the officer ventured? (The majority deems it pertinent that the officer: “took a couple of steps past the hotel-room door” and refers to the officer’s entry as “limited.” Id. at ¶¶ 6, 27.) Does inferred, consent turn on whether the defendant was present or nearby? And if so, how near is near enough? (The majority makes a point of noting that • Stock “was present in the room just a few feet away.” Id. at ¶21.) • -
¶ 62 The doctrines of actual authority, common authority, and apparent authority clearly delineate methods of proving consent, and those doctrines can easily be applied. In contrast, the majority’s apparent “inferred consent based on the circumstances” excep- ■ tion provides no discernible standard, and I fear that such an exception could potentially be applied so broadly that it would swallow the Fourth Amendment rule against war-rantless entries into a person’s home, at least in cases involving third-party consent.
III. Conclusion
¶ 63 Although the evidence in this case does not suggest, nor do I intend to imply, that the officer here acted with anything other than good faith, the officer’s conduct must be measured against well-settled case law delineating what police officers must do to vindicate every citizen’s- Fourth Amendment right to be secure in his or her home.
¶ 64 Here, for the reasons set forth above, I believe that the officer’s warrantless entry into Stock’s home crossed the Fourth Amendment’s firm line. Because the People have not established Stock’s consent to this warrantless entry and because I cannot endorse what I view to be the majority’s significant expansion of the consent exception to the Fourth Amendment’s warrant requirement, I respectfully dissent.