Argued April 12, affirmed April 20, 1915.

## STATE *v.* CANTON.

(147 Pac. 927.)

**Witnesses—Re-examination—Explanation of Testimony.**

1.  It is competent for the state to explain a transaction called out by defendant on the cross-examination of a witness.

**Criminal Law—Instructions—Accomplices—Corroboration.**

2.  A charge that the evidence, aside from the testimony of an accomplice, must show defendant's connection with the commission of the crime is correct, though it does not include the provision of Section 1540, L. O. L., that corroboration is not sufficient if it merely show the commission of a crime.

> [As to whether conviction may be based upon the uncorroborated testimony of accomplices, see notes in 71 Am. Dec. 671; 34 Am. Rep. 408; 98 Am. St. Rep. 158.]

**Witnesses—Competency—"Unsound Mind."**

3.  A weak-minded degenerate is not a person of "unsound mind," prohibited from testifying by Section 731, L. O. L., and his testimony, admitted without objection, will not be rejected.

> [As to admissibility of evidence of insane witness, see notes in 28 Am. St. Rep. 942; 128 Am. St. Rep. 942. As to competency of insane person as witness, see note in Ann. Cas. 1913E, 323.]

From Jackson: Frank M. Calkins, Judge.

The defendant, W. J. Canton, was indicted, tried and convicted of the crime of sodomy, and from the judgment and sentence imposed he appeals. Affirmed.

For appellant there was a brief over the names of *Mr. Benjamin F. Mulkey* and *Mr. W. J. Canton,* with an oral argument by *Mr. Mulkey.*

For the State there was a brief over the names of *Mr. E. E. Kelly,* District Attorney, and *Mr. Isaac H. Van Winkle,* Deputy Attorney General, with an oral argument by *Mr. Van Winkle.*

Department 1. Mr. Justice Eakin delivered the opinion of the court.

The defendant was indicted for the crime of sodomy, by osculation, alleged to have been committed upon the person of Richard Coffman, and, having been convicted as charged, he appeals.

Three grounds of misapplication of the law, relied on for reversal, are as follows:

"I.    The court erred in permitting the witness John Opp for the state on redirect examination, over the objection of appellant, to state that the witness Richard Coffman told him and the district attorney the details of the crime alleged in the indictment, 'about the same as he [Richard Coffman] stated here,' at a time when the appellant was not present.

"II.    The court erred in instructing the jury upon the corroboration required by statute of the testimony of an accomplice.

"III.    The court erred in overruling defendant's motion to set aside the judgment and sentence, and to grant a new trial of said cause."

1. John W. Opp, a witness for the state, on cross-examination by defendant's counsel was interrogated and gave answers as follows:

"Q. So you went with Mr. Kelly [the district attorney] out on Griffin Creek to see the boy, did you?

"A. Yes, sir.

"Q. Now, then, the boy was seen by you too that day and talked to. How long did you talk to the boy?

"A. Why, probably 20 minutes or a half hour.

"Q. Did you have any difficulty in getting it out of the boy what he had seen?

"A. Not at all.

"Q. Tell a pretty consistent story?

"A. He did.

"Q. You heard him testify a while ago?

"A. I did.

"Q. As consistent as that?

"A. No, much more consistent than that.

"Q. And you went with Mr. Kelly out there for the purpose of seeing about it?

"A. Well, I went with Mr. Kelly. He insisted upon me going."

On redirect examination by Mr. Kelly, the district attorney, the following occurred:

"Q. Mr. Opp, you were present when the Coffman boy was talking about these details?

"A. Yes, sir.

"Q. Did I, or you, or any other person, suggest to him what occurred there?

"A. No, sir.

"Mr. Mulkey (Defendant's Attorney): Objected to as incompetent, irrelevant and immaterial.

"The Court: He may investigate.

"Mr. Kelly: You opened that up, and we think we have a right to go into it.

"Mr. Mulkey: I mean as to what was said. We object to what was said.

"The Court: There hasn't been anything offered with reference to anything that was said. He asked him if he tried to induce him to say anything.

"Mr. Mulkey: Oh, I thought he asked what was said.

"Q. Did you make any suggestion to him as to what happened there?

"A. No, sir.

"Q. Did I make any suggestion to him as to what happened there?

"A. No, sir. You did not.

"Q. Who was present?

"A. You called in his father. Do you want me to state what—

"Q. Yes.

"A. You called in his father and asked him. Said that there was a little matter you wished to talk to him about in regard to his boy, and so he called in the boy, and the boy hesitated to tell what had happened, and his father says, 'Go on and tell the truth about it'; and the boy went on and stated about the same as he stated here.

"Q. Was there ever any suggestion made or leading question put to him?

"A. Absolutely none. Not a particle of any kind."

No further objection was made than is here given. It will be seen that all this testimony was in direct response to what was brought out in cross-examination. No error was committed in admitting the testimony complained of. Counsel will not be permitted to call out part of a transaction and then allowed to object to matters explaining it. In fact, it is difficult to see how anything that was said by the witness could have injured the defendant.

2. The court gave this instruction, which was excepted to:

"Now, some of the evidence here is given by one whom the law terms an 'accomplice' (that is, Richard Coffman); and I will say to you that the law requires corroborative proof (that is, you could not accept the evidence of Richard Coffman alone and find the defendant guilty upon that evidence, but you must be satis-

fied by other evidence offered in the case, aside from
that of Richard Coffman, that will convince your mind,
beyond a reasonable doubt, that this defendant was
connected with the commission of the crime as
charged). * * Now, there is one other instruction that
I omitted to give you, and that is in regard to the evi-
dence of an accomplice. The law requires that the
jury should view the evidence of an accomplice with
caution. That doesn't mean that you are to entirely
disregard it, but you are to scrutinize it carefully."

Section 1540, L. O. L., is as follows:

"A conviction cannot be had upon the testimony of
an accomplice, unless he be corroborated by such other
evidence as tends to connect the defendant with the
commission of the crime, and the corroboration is not
sufficient if it merely show the commission of the crime,
or the circumstances of the commission."

The objection counsel makes to this instruction is
that it does not include the latter part of the section of
the statute quoted—that "the corroboration is not
sufficient if it merely show the commission of the
crime." We think this objection is not well taken.
The instruction directly told the jury:

"You must be satisfied by other evidence offered in
the case, aside from that of Richard Coffman, that will
convince your mind, beyond a reasonable doubt, that
the defendant was connected with the commission of
the crime as charged."

This certainly avoids the contention of counsel as to
the necessity of charging the jury that this corrobora-
tive testimony is not sufficient if it merely shows the
commission of the crime. But the jury were distinctly
told that the evidence must show the defendant's con-
nection with the commission of the crime. We think
this instruction amply states the law and is in full com-
pliance with the adjudicated cases.

3. The principal contention of defendant is founded on his motion for a new trial, interposed after sentence had been pronounced. He asked the court to set aside the verdict and to grant a new trial for the reason that Coffman was of unsound mind. To support this controversy, the defendant filed his own affidavit to the effect that he did not know of this mental impairment until after the trial. The defendant's affidavit is accompanied by the sworn statements of two physicians to the effect that the witness Coffman was of unsound mind. This question was not raised at all during the trial. It appears from the defendant's own testimony that he met Coffman on the streets, engaged him to go out and show the location of a mine, and that the boy started with him, and in making the journey Coffman states the act complained of occurred. The defendant heard the boy testify in the justice court at the preliminary examination and on the trial in the Circuit Court. After his conviction Canton asserts he was told by a physician that Coffman was of unsound mind, but that the defendant did not sufficiently suspect the boy's mental infirmity so as to make him raise the question at the trial. If Coffman did not give signs of mental unsoundness in all these proceedings sufficient to put the defendant on inquiry as to his condition of mind, he was undoubtedly a competent witness. Section 731, L. O. L., provides that:

"All persons without exception, except as otherwise provided in this chapter, who, having organs of sense can perceive, and perceiving can make known their perceptions to others, may be witnesses."

The next section provides that persons of unsound mind are not competent witnesses. While it is not necessary, in this case, to construe these sections of the

statute strictly, we apprehend that a witness, who can go through the two examinations to which Coffman was subjected, and especially the one as long and severe as the trial herein,without disclosing unsoundness of mind, is a competent witness. That he is weak-minded appears from a perusal of his testimony, but this intellectual condition is not the "unsoundness of mind" which is meant by the statute. In deciding this motion, the learned judge of the court below said:

"The only basis for granting a new trial in this case is the statement in defendant's affidavit that he did not know, at the time of trial, the mental condition of witness Coffman. Defendant has made a part of his motion all of the files and proceedings had upon the trial. It appeared at the trial that witness Coffman was a witness at the preliminary hearing, and was cross-examined fully by defendant. It also appears from the testimony of defendant that he accompanied the witness on the day of the alleged offense, and at that time the witness disclosed his mental condition. The witness was examined and cross-examined fully at the trial, and it is impossible to comprehend how any one hearing that examination could be ignorant of the witness' mental condition. It was also stated at the hearing of the motion, and not denied, that defendant and his counsel discussed the advisability of objecting to the witness' evidence on the ground of unsoundness, and that defendant decided not to raise the question. It was apparent at the trial that witness was not an insane person but a mental degenerate. What occurred at the time the oath was administered was sufficient to put defendant upon notice of the witness' mental limitations. And after the close of his testimony no motion to strike was offered. It must be presumed that defendant was satisfied to have his evidence go to the jury, and he cannot take one course at the trial, and, when the results are unsatisfactory, ask to take another position, for new trial. I find no error sufficient to warrant a new trial of the case."

That this witness was a degenerate is certain, else
this case would not be here.   But he was a competent
witness, and his testimony could not have been rejected
upon that ground.   If his statements made upon oath
stood alone a conviction obtained on them ought not
to stand, but he is so strongly corroborated by the
testimony of John W. Opp, who witnessed so much of
the transaction as to make the sworn declarations of
Coffman almost a demonstration.   Mr. Opp appears to
have been a fair, intelligent and unbiased witness, and
his testimony is entitled to full credit.   This objection
came too late to be considered, but was so strenuously
pressed by counsel for defendant that we have taken
the pains to examine it, and we find no ground to dis-
turb the judgment of the court below.

It is therefore affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and
MR. JUSTICE BURNETT concur.