Argued and submitted October 4, 2021, affirmed March 23, petition for review denied July 28, 2022 (370 Or 197)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VANESSA GONZALEZ-CORIA,
aka Vanessa Gonzalez,
*Defendant-Appellant.*

Marion County Circuit Court
19CR40613, 16CR27977;
A172502 (Control), A172501

508 P3d 52

In this consolidated appeal, defendant challenges the denial of her motion to suppress evidence that led both to her conviction of four new crimes and to the revocation of her probation. The evidence was found inside defendant's boyfriend's house, where defendant was living at the time that it was searched by the police. Defendant contends that the search was unconstitutional under both the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. Defendant argues that, although her boyfriend consented to the search, she denied consent, and that her denial of consent is controlling under the "disagreeing tenants" exception to the "common authority" rule. She asks that the Court of Appeals recognize that exception—which is established under the Fourth Amendment—for purposes of Article I, section 9. *Held*: The trial court did not err by denying the motion to suppress. Under the Fourth Amendment, the disagreeing-tenants exception does not apply on the facts of this case, where defendant expressly denied living in the house. As for Article I, section 9, assuming without deciding that a disagreeing-tenants exception would be recognized, it would not extend to this situation.

Affirmed.

Audrey J. Broyles, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Before her trial on an alleged probation violation and four new charges, defendant moved to suppress incriminating evidence that the police found in the house that defendant shared with her boyfriend, J. Invoking the "disagreeing tenants" exception to the "common authority" rule, defendant argued that she had denied consent to search the house and that her denial trumped her boyfriend's consent. The trial court denied the motion. Defendant was subsequently convicted on the four new charges, and her probation was revoked. On appeal, defendant raises a single assignment of error, challenging the denial of her motion to suppress. For the following reasons, we affirm.

## FACTS

We review the denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's findings of facts if supported by constitutionally sufficient evidence. *Id.* In the absence of express findings, we presume that the court made implicit findings consistent with its ultimate ruling. *Id.* We state the facts in accordance with the standard of review.

In 2016, defendant was convicted of cocaine delivery and child neglect. She was sentenced to 60 months of formal probation.

In August 2018, the police received a tip that J was a "significant heroin drug trafficker." The police received additional information in that vein in January and February 2019. During their investigation, the police gathered information connecting defendant to J and thought that defendant was "maybe" living at J's house on Starr Court. The investigating officer informed defendant's probation officer that he had seen defendant "frequenting" J's house. When questioned by her probation officer, defendant denied living there and denied knowing J. She maintained that she was living with her mother, C, on Shores Drive, as she had previously reported.

On June 13, 2019, various law enforcement officers were surveilling the Starr Court house. At one point, they

saw defendant's mother, C, carrying a small paper bag believed to contain drug proceeds. As officers approached C, J emerged from the house with a rolling suitcase. Immigration agents handcuffed J and placed him in a vehicle, while other officers put C in a patrol car. C said that there were children in the house. An officer knocked on the front door, and no one answered, but he heard rustling. While that was happening, defendant walked out from behind the house, across the side yard, and into the driveway. Two officers detained defendant on suspicion that she was violating her probation by residing at the Starr Court address without informing her probation officer, by being involved in drug trafficking, by "associating with a known drug trafficker," and by being "deceitful in answering questions."

An officer put defendant in a patrol car. Two officers asked defendant for her consent to search the house. She replied, "I can't, I don't—I don't live here." Both J and C also told the officers that defendant did not live at the house.

The officers requested J's consent to search the house to "make sure the kids are okay and to look for drugs." J gave consent. It is undisputed that J had authority to consent, as he rented the house and lived there. The children opened a door, and officers began searching the house, while C spoke with the children. Officers found a digital scale, rubber gloves, and boxes of resealable baggies in plain view in the kitchen. However, upon seeing evidence that defendant and her children were living in the house—specifically, a lot of women's clothing and children's toys—they stopped the search. An officer went to speak to defendant. He told defendant that he believed that she was living at the house and requested her consent to search it. Defendant continued to deny that she lived at the house. Nevertheless, the officers obtained a warrant before resuming the search. In the warranted search, they found cash, heroin, photographs, drug ledgers, counterfeit currency, and evidence of money transfers.

The court subsequently ordered defendant to show cause why her probation should not be revoked. Defendant also was charged with four new crimes: delivery of heroin as a commercial drug offense, ORS 475.850; unlawful

possession of heroin, ORS 475.854 (2017), *amended by* Or Laws 2021, ch 2, § 14; Or Laws 2021, ch 591, § 36; and two counts of first-degree child neglect, ORS 163.547. Before trial, defendant moved to suppress the evidence from the house. The trial court denied the motion. Defendant was convicted on the four new charges, and her probation was revoked. In this consolidated appeal, defendant challenges the denial of her motion to suppress, seeking reversal both of her convictions and of the probation revocation.

## ANALYSIS

Defendant contends that the trial court erred by denying her motion to suppress. She argues that the search of the Starr Court house violated her rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. In particular, defendant invokes the "disagreeing tenants" exception to the common-authority rule, as recognized under the Fourth Amendment, to argue that her denial of consent to search the house trumped J's consent to search the house, such that no evidence from the house could be used against her. Defendant argues that we should adopt the disagreeing-tenants exception for purposes of Article I, section 9, and that, in any event, the search violated the Fourth Amendment.

We normally consider state constitutional questions before federal constitutional questions. *State v. Caster*, 236 Or App 214, 225 n 4, 234 P3d 1087, *rev den*, 349 Or 479 (2010). Here, however, we begin with the Fourth Amendment, because the disagreeing-tenants exception is settled under the Fourth Amendment, whereas it remains an open issue under Article I, section 9. Moreover, because we ultimately agree with the state that the disagreeing-tenants exception does not help defendant in this case—such that adopting or rejecting an exception for purposes of Article I, section 9, would not affect the disposition—this case is not the appropriate vehicle to conclusively decide that open issue. *See State v. A. S.*, 296 Or App 722, 735 n 8, 443 P3d 618, *rev den*, 365 Or 502 (2019) (declining to decide whether to adopt the disagreeing-tenants exception, because "*Randolph*'s exception and the rationale for it do not extend to these factual circumstances and would not yield a different result in this case").

Under the Fourth Amendment, a warrantless search is *per se* unreasonable unless it fits into an established exception to the warrant requirement. *California v. Acevedo*, 500 US 565, 580, 111 S Ct 1982, 114 L Ed 2d 619 (1991). Consent is an established exception to the warrant requirement. *Schneckcloth v. Bustamonte*, 412 US 218, 228, 231-32, 93 S Ct 2041, 36 L Ed 2d 854 (1973). If a person consents to a search of a place, and the requesting officer reasonably believes that the person has authority to consent, the exception applies, even if the person actually lacks authority. *Illinois v. Rodriguez*, 497 US 177, 185-86, 110 S Ct 2793, 111 L Ed 2d 148 (1990). That is, the Fourth Amendment standard is apparent authority, not actual authority. *See id.* The reasonableness of the officer's belief regarding authority is judged objectively: "[W]ould the facts available to the officer at the moment warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* at 188 (internal quotation marks and ellipsis omitted).

When two or more people share "common authority" over a place, any one of them normally may consent to a search by the police. *United States v. Matlock*, 415 US 164, 171, 94 S Ct 988, 39 L Ed 2d 242 (1974). "[A]ny of the co-inhabitants has the right to permit the inspection in his own right," and "the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n 7 (also explaining that the concept of common authority reflects social expectations inherent to "mutual use of the property by persons generally having joint access or control for most purposes," rather than deriving from property law).

There is a "narrow exception" to the common-authority rule, however, known as the "disagreeing tenants" exception. *Fernandez v. California*, 571 US 292, 294, 134 S Ct 1126, 188 L Ed 2d 25 (2014). When two people who share common authority over a place are both present, and one expressly refuses consent to search, the consent of the other is trumped. *Georgia v. Randolph*, 547 US 103, 106, 126 S Ct 1515, 164 L Ed 2d 208 (2006). Like the rule itself, the exception is grounded in social norms: "The constant element in

assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations \* \* \*." *Id.* at 111. Socially, "a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.' Without some very good reason, no sensible person would go inside under those conditions." *Id.* at 113. Accordingly, for Fourth Amendment purposes, the objection of a present cotenant overcomes the consent of another cotenant. *Id.* at 114. If the search proceeds, anything found cannot be used against the cotenant who objected. *See id.* at 120.

Defendant argues that the disagreeing-tenants exception applies here, because she was present and objected to the search of the Starr Court house. Defendant acknowledges that she repeatedly denied living at the house, both to her probation officer and to the officers at the scene, and that her mother and J also told the officers that she did not live there. Defendant contends, however, that this situation is essentially the inverse of that in *Rodriguez*. Under *Rodriguez*, consent to search is valid if it is obtained from a person with apparent authority, even if the person lacks actual authority, so long as it is objectively reasonable to believe that the person has actual authority. 497 US at 188. In defendant's view, as described in her brief (emphasis in original), the corollary of that rule should be "that officers cannot ignore a person's *refusal* to consent unless they believe that the person *lacks* authority to prevent the search." In other words, defendant argues for an extension of the disagreeing-tenants exception, such that a person's denial of consent to search is effective, even if the person denies having actual authority to consent, if it was objectively unreasonable to believe the denial of authority. From that premise, defendant argues that "[n]one of the officers in this case seriously believed that [she] was telling the truth when she said she did not live at the Starr Court residence," and that it was objectively unreasonable to believe her.

In response, the state argues that defendant did not *refuse* consent or *object* to the search but, rather, only denied having any authority to consent. The officer who testified as to what defendant said testified that, when he asked

defendant for consent to search the house, she replied, "I can't, I don't—I don't live here." Saying that one "can't" consent, because one lacks authority over the premises, is very different from refusing consent or objecting to a search. *See Fernandez*, 571 US at 294 (requiring the cotenant to "object[] to the search"); *Randolph*, 547 US at 122 (requiring "express refusal of consent" by the cotenant); *United States v. Moore*, 770 F3d 809, 814 (9th Cir 2014) (explaining that *Randolph* requires "an express, not implicit, refusal").[1]

There is a potential ambiguity in the record, however, in that, immediately after stating verbatim what defendant said when asked for consent, the officer continued, "She denied consent and then requested her attorney." In context, the state may well be correct that the officer's reference to defendant having "denied consent" was simply his own characterization of defendant's just-quoted statement ("I can't, I don't—I don't live here."). That is a plausible understanding of his testimony, it is consistent with the police report,[2] and the officer could well have been thinking in binary terms (consent/not consent) rather than legal nuances. We also tend to agree with the state that the trial court did not make a factual finding on this issue. In denying suppression, the court commented that defendant "can't invoke her right to say one thing at one time and then deny access at another time," which defendant views as a factual finding that she denied consent. In context, the court appears to have been rejecting defendant's legal theory, not making a factual finding as to whether she expressly denied consent.

---

[1] In this case, defendant was the first person asked for consent to search the house. If the police had asked J first, and he consented, the police would not have needed to ask defendant for consent, regardless of whether they knew she lived there. *See Randolph*, 547 US at 121 ("[W]e have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the cotenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."); Wayne R. LaFave, 4 *Search & Seizure* § 8.3(d), at 211 n 73 (6th ed 2020) (collecting cases in support of the principle that, under *Randolph*, the police need not take affirmative steps to determine whether a present cotenant objects to a search to which another cotenant has consented).

[2] The police report says, "[Defendant] denied consent to search her residence stating she did not live there. [Defendant] then screamed that she wanted her attorney. No further questions were asked of [defendant] at this time."

Nonetheless, there is some ambiguity in the officer's testimony, and, because the state bore the burden of proof, the state's failure to resolve that ambiguity favors defendant. We therefore assume *arguendo* for the remainder of our analysis that defendant both expressly disclaimed living in the house and having any ability to consent to a search ("I can't, I don't—I don't live here.") and also said something that would qualify as expressly refusing consent to search.

Defendant's argument still fails under the Fourth Amendment. Defendant essentially urges an extension of the disagreeing-tenants exception that would benefit only people who purposefully lie and make conflicting statements to the police—and that would require the police to *disbelieve* part of what they say (that they do not live there) *but believe* the other part (that they object to the search). Such an extension lacks the logical appeal of the narrow exception that has been recognized under the Fourth Amendment. More importantly, it is at odds with the underlying principle of the exception, which, like the common-authority rule itself, is grounded in social norms.

We have already described the example given in *Randolph* regarding how the disagreeing-tenants exception reflects social norms—a "sensible" social visitor would not accept an invitation into someone's home if a cotenant was standing there telling the visitor that the visitor is unwelcome and to stay out. *Randolph*, 547 US at 113. Now consider a variation on that scenario. A social visitor approaches a house where two people are standing on the porch. One person, who the visitor knows lives there, invites him in. The second person pipes up, "I don't live here, so it's not for me to say, but I don't want you to go in." The visitor might be discomfited by the second person's remark, but it would not violate social norms for the visitor to accept the invitation of the first person—who definitely lives there—and disregard the statement by the second person, who is expressly disclaiming any right to control who enters. A person who expressly disclaims cotenancy should not have more sway than a known cotenant who is standing silently nearby. *See Randolph*, 547 US at 121 (recognizing that a cotenant who is "nearby but not invited to take part in the threshold colloquy" regarding consent "loses out").

In sum, under the Fourth Amendment, the disagreeing-tenants rule is a narrow exception to the common-authority rule, it is grounded in social norms, and we disagree that it applies to the present facts. A person who wants to overcome a cotenant's valid consent to a police search cannot have it both ways, simultaneously claiming no right to control who enters the premises but also objecting to the police's entry.

That leaves the issue of Article I, section 9. Oregon has adopted the common-authority doctrine for purposes of our state constitution—*State v. Bonilla*, 358 Or 475, 481, 366 P3d 331 (2015)—but, as previously noted, has not yet adopted a disagreeing-tenants exception. There is a twist to the potential application of such an exception under our state constitution in that, under Article I, section 9, a person consenting to a police search of premises must have actual authority for the consent to be effective; apparent authority is not enough. *Id.* at 486. With that in mind, defendant proposes an exception under Article I, section 9, that would work as follows: A person's express objection to a search is effective—*i.e.*, it overcomes the consent of another person with actual authority—if the objecting person has actual authority over the premises, even if the objecting person expressly denies having authority over the premises.

The differences between federal and Oregon constitutional law raise significant issues as to what the appropriate parameters would be for any disagreeing-tenants exception that we might adopt. *See Bonilla*, 358 Or at 486 ("[T]he Fourth Amendment doctrine of apparent authority is based on different principles than those underlying the consent exception under Article I, section 9."). But we need not finally resolve that matter today. Whatever the exact parameters might be of a disagreeing-tenants exception to the common-authority rule applicable to consent as an exception to the warrant requirement under Article I, section 9, we are unpersuaded that they would extend to the facts here. Were Oregon to adopt a disagreeing-tenants exception, it would be one that makes sense for Article I, section 9, taking into account the respects in which it differs from the Fourth Amendment. *See Billings v. Gates*, 323 Or 167, 173, 916 P2d 291 (1996) (when interpreting the Oregon Constitution, the Oregon Supreme Court "is not bound by an

interpretation of the United States Supreme Court relating to a parallel provision of the federal constitution," so parties should put forth "principled arguments" under state law).

Unlike the federal approach to the Fourth Amendment, "consent under Article I, section 9, involves the relinquishment of a privacy interest," which is why consent "must be given by (or lawfully on behalf of) the person who holds the protected privacy interest." *Bonilla*, 358 Or at 486. When two people have actual authority over a shared space, either person may consent to a search, "based on his or her own property interest," thus effectively relinquishing both people's privacy interests. *Id*. ("[T]he existence of valid third-party consent depends either on the third party's common authority over the property based on her or his own property interest, or, alternatively, on the application of agency principles." (Internal citation omitted.)); *State v. Dowdy*, 117 Or App 414, 419, 844 P2d 263 (1992) (where person with common authority over hotel room consented to a search, the defendant's "privacy interest in the room was not violated"). That is the risk of cotenancy. *State v. Beylund*, 158 Or App 410, 418, 976 P2d 1141, *rev den*, 328 Or 594 (1999) ("[D]efendant assumed the risk that Wicker would permit others to have access to his property by renting the premises to Wicker."); *see also, e.g.*, *State v. Carrillo*, 304 Or App 192, 199, 466 P3d 1023, *rev den*, 367 Or 220 (2020) (girlfriend who shared a bedroom with the defendant could validly consent to a police search of their bed); *State v. Cook*, 242 Or 509, 515, 411 P2d 78 (1966) (caretaker who had a key and unqualified access to family farmhouse could validly consent to a police search of the farmhouse).

Here, J had undisputed actual authority to consent to a search of the house. In giving consent, he consented for himself and on behalf of anyone sharing the house with him, thus relinquishing everyone's privacy rights (at least insofar as the shared areas of the house). Under any possible disagreeing-tenants exception that we would adopt, defendant could not overcome J's valid consent while she herself denied having any privacy interest in the house. When the police have obtained valid consent from someone with actual authority to search a place, the fact that it is a shared space is irrelevant, unless, at a minimum, a cotenant is present,

claims a privacy interest in the space, and expressly objects to the search or refuses consent. Thus, even assuming argu-endo that we would adopt a disagreeing-tenants exception to the common-authority rule for purposes of Article I, section 9, it would not extend to these circumstances.

For all of the foregoing reasons, the trial court did not err by denying defendant's motion to suppress.[3]

Affirmed.

---

[3] Given our reasoning, we do not address the parties' disagreement as to what the two officers who testified at the suppression hearing subjectively believed at the moment that they began searching the house—as to whether defendant lived there—or whether their beliefs were objectively reasonable.